UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Pharmaceutical Research & Manufacturers of America, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. Department of Health and Human Services, *et al.*,<br><br>Defendants. | Case No. 1:20-cv-03402-TJK |

**Reply in Support of Defendants' Motion to Dismiss the First Amended Complaint**

OF COUNSEL:

DANIEL BARRY
    Acting General Counsel
    U.S. Department of Health
    and Human Services

WENDY S. VICENTE
    Acting Deputy Chief Counsel for
    Litigation

PETER DICKOS
    Associate Chief Counsel
    Office of the Chief Counsel
    Food and Drug Administration
    10903 New Hampshire Avenue
    Silver Spring, MD  20993

BRIAN M. BOYNTON
    Acting Assistant Attorney General

ARUN G. RAO
    Deputy Assistant Attorney General

GUSTAV W. EYLER
    Director

HILARY K. PERKINS
    Assistant Director

JAMES W. HARLOW
    Senior Trial Attorney
KIMBERLY R. STEPHENS
    Trial Attorney
    Consumer Protection Branch
    Civil Division
    U.S. Department of Justice
    P.O. Box 386
    Washington, DC  20044-0386
    (202) 514-6786 (Harlow)
    (202) 305-0033 (Stephens)
    James.W.Harlow@usdoj.gov
    Kimberly.R.Stephens@usdoj.gov

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

ARGUMENT .................................................................................................................. 2

I.   Plaintiffs cannot further amend their complaint through declarations .................. 2

II.  Without any imminent SIP authorization, Plaintiffs lack standing ......................... 4

   A.   No SIP authorization was (or is) imminent ...................................................... 4

      1.   The future, discretionary actions of putative SIP Sponsors and FDA are insurmountable obstacles to standing generally ............................................... 5

      2.   Plaintiffs cannot show imminent authorization of Florida's Proposal .......... 8

   B.   Plaintiffs' voluntary expenditures cannot make a SIP authorization imminent ............................................................................................................ 10

   C.   Procedural standing also fails for lack of imminent SIP authorization ........... 11

   D.   At a minimum, CAHC and PSM should be dismissed ...................................... 13

III. Plaintiffs have not plausibly alleged any procedural violations ......................... 14

   A.   The Certification was not a rule, and Plaintiffs commented on it anyway ..... 15

   B.   A SIP authorization would be a license, not a rule .......................................... 17

   C.   A plausible claim requires more than speculation about a lack of interagency consultation ................................................................................... 20

IV.  This case remains unripe at least until FDA authorizes a SIP ............................ 20

   A.   These agency actions are not fit for review absent further implementation .. 21

   B.   Postponing review causes Plaintiffs no immediate hardship ......................... 24

CONCLUSION ............................................................................................................. 25

# TABLE OF AUTHORITIES

## Cases

*Abbott Labs. v. Gardner*,
   387 U.S. 136 (1967) ........................................................................................ 21

*Abhe & Svoboda, Inc. v. Chao*,
   508 F.3d 1052 (D.C. Cir. 2007) ........................................................................ 3

*Apotex, Inc. v. FDA*,
   226 F. App'x 4 (D.C. Cir. 2007) ...................................................................... 19

*Arizonans for Off. English v. Arizona*,
   520 U.S. 43 (1997) ................................................................................... 13, 14

*Arpaio v. Obama*,
   797 F.3d 11 (D.C. Cir. 2015) ................................................................... 4, 9, 20

*Atlantic States Legal Foundation, Inc. v. EPA*,
   325 F.3d 281 (D.C. Cir. 2003) ................................................................... 21, 25

*Bellinger v. Bowser*,
   No. CV 17-2124 (TJK), 2018 WL 4705808 (D.D.C. Sept. 30, 2018) ................. 21

*Bennett v. Spear*,
   520 U.S. 154 (1997) .......................................................................................... 7

*Blanchette v. Conn. Gen. Ins. Corps.*,
   419 U.S. 102 (1974) ........................................................................................ 25

*Brownback v. King*,
   141 S. Ct. 740 (2021) ...................................................................................... 15

*Cablevision Sys. Corp. v. FCC*,
   649 F.3d 695 (D.C. Cir. 2011) ......................................................................... 23

*Cause of Action Inst. v. DOJ*,
   999 F.3d 696 (D.C. Cir. 2021) ......................................................................... 20

*Cent. Texas Tel. Co-op., Inc. v. FCC*,
   402 F.3d 205 (D.C. Cir. 2005) ................................................................... 16, 17

*Center for Biological Diversity v. U.S. Dep't of Interior*,
   563 F.3d 466 (D.C. Cir. 2009) ........................................................................... 8

*Chisholm v. FCC*,
   538 F.2d 349 (D.C. Cir. 1976) ................................................................... 15, 16

*Ciox Health, LLC v. Azar*,
   435 F. Supp. 3d 30 (D.D.C. 2020) ................................................................... 23

*City of Waukesha v. EPA,*
  320 F.3d 228 (D.C. Cir. 2003) ........................................................................... 11

*\*Clapper v. Amnesty Int'l USA,*
  568 U.S. 398 (2013) ..................................................................................... passim

*CSI Aviation Servs., Inc. v. Dep't of Transp.,*
  637 F.3d 408 (D.C. Cir. 2011) ........................................................................... 23

*Ctr. for L. & Educ. v. Dep't of Educ.,*
  396 F.3d 1152 (D.C. Cir. 2005) ......................................................................... 14

*Deppner v. Spectrum Health Care Res., Inc.,*
  325 F. Supp. 3d 176 (D.D.C. 2018) ..................................................................... 3

*Devia v. Nuclear Regul. Comm'n,*
  492 F.3d 421 (D.C. Cir. 2007) ..................................................................... 21, 24

*Easton Util. Comm'n v. Atomic Energy Comm'n,*
  424 F.2d 847 (D.C. Cir. 1970) ........................................................................... 19

*\*Fla. Audubon Soc'y v. Bentsen,*
  94 F.3d 658 (D.C. Cir. 1996) ................................................................. 12, 13, 15

*\*Food & Water Watch, Inc. v. Vilsack,*
  808 F.3d 905 (D.C. Cir. 2015) ...................................................................... passim

*Gatore v. U.S. Dep't of Homeland Sec.,*
  327 F. Supp. 3d 76 (D.D.C. 2018) ....................................................................... 2

*Haase v. Sessions,*
  835 F.2d 902 (D.C. Cir. 1987) ......................................................................... 3, 4

*Howard Univ. v. Watkins,*
  857 F. Supp. 2d 67 (D.D.C. 2012) ....................................................................... 3

*In re Sci. Applications Int'l Corp. (SAIC) Backup Tape Data Theft Litig.,*
  45 F. Supp. 3d 14 (D.D.C. 2014) ....................................................................... 11

*\*Ipsen Biopharmaceuticals, Inc. v. Becerra,*
  No. 20-CV-2437 (DLF), 2021 WL 4399531 (D.D.C. Sept. 24, 2021) ................... 7

*Lujan v. Nat'l Wildlife Fed'n,*
  497 U.S. 871 (1991) ......................................................................................... 22

*Marcum v. Salazar,*
  810 F. Supp. 2d 56 (D.D.C. 2011) ..................................................................... 18

*Mattiaccio v. DHA Grp., Inc.,*
  908 F. Supp. 2d 136 (D.D.C. 2012) ..................................................................... 3

*Mendoza v. Perez,*
  754 F.3d 1002 (D.C. Cir. 2014) ......................................................................... 18

*Milk Industry Foundation v. Glickman,*
132 F.3d 1467 (D.C. Cir. 1998) ...................................................................... 16, 17

*M.M.V. v. Garland*
1 F.4th 1100 (D.C. Cir. 2021). ........................................................................ 13, 14

*Muttitt v. U.S. Cent. Command,*
813 F. Supp. 2d 221 (D.D.C. 2011) .................................................................. 3

*N. Mariana Islands v. United States,*
686 F. Supp. 2d 7 (D.D.C. 2009) ...................................................................... 20

*Narragansett Indian Tribal Historic Pres. Off. v. FERC,*
949 F.3d 8 (D.C. Cir. 2020) .............................................................................. 12

*Nat'l Ass'n of Broadcasters v. FCC,*
789 F.3d 165 (D.C. Cir. 2015) ......................................................................... 8

*Nat'l Ass'n of Home Builders v. U.S. Army Corps of Eng'rs,*
417 F.3d 1272 (D.C. Cir. 2005) ....................................................................... 25

*Nat'l Ass'n of Home Builders v. U.S. Fish & Wildlife Serv.,*
786 F.3d 1050 (D.C. Cir. 2015) ....................................................................... 15

*Nat'l Biodiesel Bd. v. EPA,*
843 F.3d 1010 (D.C. Cir. 2016) ....................................................................... 17, 18

*\*Nat'l Park Hosp. Ass'n v. Dep't of Interior,*
538 U.S. 803 (2003) .......................................................................................... 22, 24

*New Jersey v. EPA,*
626 F.2d 1038 (D.C. Cir. 1980) ....................................................................... 20

*New Jersey v. EPA,*
989 F.3d 1038 (D.C. Cir. 2021) ....................................................................... 11

*Nichols v. Bd. of Trustees of Asbestos Workers Loc. 24 Pension Plan,*
835 F.2d 881 (D.C. Cir. 1987) ......................................................................... 19

*NLRB v. Bell Aerospace Co.,*
416 U.S. 267 (1974) .......................................................................................... 15

*Ohio Forestry Ass'n v. Sierra Club,*
523 U.S. 726 (1998) .......................................................................................... 23

*Pacific Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n,*
461 U.S. 190 (1983) .......................................................................................... 24

*Pfizer v. Shalala,*
182 F.3d 975 (D.C. Cir. 1999) ......................................................................... 7

*Pub. Citizen, Inc. v. Trump,*
297 F. Supp. 3d 6 (D.D.C. 2018) ..................................................................... 14

iv

*Public Citizen, Inc. v. Nat'l Highway Traffic Safety Admin.*,
   489 F.3d 1279 (D.C. Cir. 2007) ................................................................... 5

*R.J. Reynolds Tobacco Co. v. FDA*,
   810 F.3d 827 (D.C. Cir. 2016) ................................................................... 10

*Rockwell Int'l Corp. v. United States*,
   549 U.S. 457 (2007) ................................................................... 2

*Sherley v. Sebelius*,
   610 F.3d 69 (D.C. Cir. 2010) ................................................................... 7

*Sprint Corp. v. FCC*,
   331 F.3d 952 (D.C. Cir. 2003) ................................................................... 23, 25

*State Farm Mut. Auto. Ins. Co. v. Dole*,
   802 F.2d 474 (D.C. Cir. 1986) ................................................................... 21, 22, 23, 25

*Teva Pharmaceuticals USA, Inc. v. Azar*,
   369 F. Supp. 3d  (D.D.C. 2019) ................................................................... 6

*Tex. Low Income Hous. Info. Serv. v. Carson*,
   427 F. Supp. 3d 43 (D.D.C. 2019) ................................................................... 2, 9

*Texas v. United States*,
   523 U.S. 296 (1998) ................................................................... 21

*Toilet Goods Ass'n, Inc. v. Gardner*,
   387 U.S. 158 (1967) ................................................................... 25

*TransUnion LLC v. Ramirez*,
   141 S. Ct. 2190 (2021) ................................................................... 13

*Trump v. New York*,
   141 S. Ct. 530 (2020) ................................................................... passim

*U.S. Telecom Ass'n v. FCC*,
   400 F.3d 29 (D.C. Cir. 2005) ................................................................... 17

*ViroPharma, Inc. v. Hamburg*,
   898 F. Supp. 2d 1 (D.D.C. 2012) ................................................................... 19

*Wellness Pharmacy, Inc. v. Becerra*,
   No. 20-CV-3082 (CRC), 2021 WL 4284567 (D.D.C. Sept. 21, 2021) ................................................................... 8, 23

*Wildlife v. Perciasepe*,
   714 F.3d 1317 (D.C. Cir. 2013) ................................................................... 13

**Statutes**

5 U.S.C. §
   551(4) ................................................................... 16

551(6) .............................................................................................................. 16
553 .................................................................................................................. 17
554(e) ........................................................................................................ 15, 16
555(b) ............................................................................................................. 19

21 U.S.C. §
355(c)(3)(E)(ii) ............................................................................................. 19
355(d) ............................................................................................................. 19
355(j)(5)(F)(ii) ............................................................................................... 19
384 ........................................................................................................... 13, 16
384(b) ............................................................................................................. 15
384(e) ............................................................................................................. 18
384(h) ............................................................................................................. 18
384(l) ....................................................................................................... 15, 17

## Regulations and Rules

21 C.F.R. §
10.25(a) ......................................................................................................... 19
10.85(k) ........................................................................................................... 9
Part 251 .......................................................................................................... 18
251.3 ............................................................................................................... 18
251.3(c) ............................................................................................................. 5
251.3(d) ....................................................................................................... 5, 22
251.3(d)(9) ..................................................................................................... 22
251.3(e)(11) ...................................................................................................... 5
251.3(e)(13) ...................................................................................................... 6
251.4 ............................................................................................................... 18
251.4(a) ....................................................................................................... 6, 22
251.5 ............................................................................................................... 18
251.14(b) ........................................................................................................ 18
251.16 ............................................................................................................. 18

Fed. R. Civ. P. 12(b)(1) ............................................................................... 3, 4

Fed. R. Civ. P. 12(b)(6) ............................................................................... 3, 4

## Other Authorities

84 Fed. Reg. 70,796 (Dec. 23, 2019) ............................................................ 17

85 Fed. Reg. 62,094 (Oct. 1, 2020). ......................................................passim

# GLOSSARY

| | |
|---:|:---|
| Abbreviated New Drug Application | ANDA |
| Council for Affordable Health Coverage | CAHC |
| Certification to the Congress (Sept. 23, 2020) | Certification |
| New Drug Application | NDA |
| Notice of Proposed Rulemaking, 84 Fed. Reg. 70,796 (Dec. 23, 2019) | NPRM |
| Pharmaceutical Research and Manufacturers of America | PhRMA |
| Partnership for Safe Medicines | PSM |
| Importation of Prescription Drugs, 85 Fed. Reg. 62,094 (Oct. 1, 2020) | Rule |
| Section 804 Importation Program | SIP |

**INTRODUCTION**

Congress sought to reduce Americans' prescription drug costs by creating a pathway to import certain drugs from Canada. Plaintiffs expend many words questioning the wisdom of this pathway, which was developed through the HHS Secretary's Certification and the Rule.[1] But the questions before the Court are not the what and the how of the policy's merits, but *if* and *when*. When does Plaintiffs' disagreement with the Certification and the Rule evolve into a justiciable case under Article III? Not yet. Plaintiffs cannot meet their burden to show jurisdiction while the actuality of importing drugs from Canada remains uncertain and the timing indefinite.

The Certification and Rule establish a novel framework under which States and Indian Tribes may propose programs—SIPs—to import certain drugs from Canada. Each proposed SIP must satisfy exacting regulatory criteria, which address every aspect of the importation process. As Plaintiffs assert, building a drug supply chain from scratch is no easy task and lies beyond the traditional purview of state governments. Despite the current Administration's support for FDA's work with States and Tribes that propose to develop SIPs, it remains uncertain if or when a proposal may substantively satisfy the regulatory requirements, given their complexity and novelty.

Though Plaintiffs' Opposition tries to overlook it, *FDA* bears the responsibility for determining, in its discretion, whether any SIP proposal merits authorization. No proposal will be authorized that, in the agency's judgment, does not sufficiently protect public health and safety, and yield significant cost savings to consumers. None has yet reached that bar; and Plaintiffs can only speculate whether or when one will. Until then, neither the Certification nor the Rule asks anything of Plaintiffs or their members.

---

[1] This reply brief assumes familiarity with all acronyms and abbreviated references from Defendants' opening memorandum. *See* ECF No. 34-1 ("Defs.' Mem.").

Plaintiffs first launched this sweeping attack before the Rule even became effective. Now, despite an Amended Complaint and an Opposition with an array of declarations appended, they cannot dispel the uncertainty about the future, discretionary actions of States and FDA. Given the jurisdictional deficiencies and Plaintiffs' failure to state certain claims, the Amended Complaint must be dismissed.

ARGUMENT

## I.   Plaintiffs cannot further amend their complaint through declarations

As an initial matter, Defendants address two important limitations on the Court's consideration of Plaintiffs' supporting declarations. *First*, "subject-matter jurisdiction depends on the state of things at the time of the action brought;" although when a plaintiff "voluntarily amends the complaint, courts look to the amended complaint to determine jurisdiction." *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 473–74 (2007) (quotation omitted). So "the Court must measure standing by the state of the world as of the date of the amended complaint." *Gatore v. U.S. Dep't of Homeland Sec.*, 327 F. Supp. 3d 76, 91 (D.D.C. 2018) (cleaned up).

Here, the Court assesses the "state of the world" on July 2, 2021, when Plaintiffs filed their Amended Complaint. But through August 2021, PhRMA's counsel continued to request "information about steps [members] have taken in order to prepare for and comply with the Rule." ECF No. 35-13, at ¶ 7. Critically, Plaintiffs provide no indication that these requests were properly cabined to the operative date of July 2, 2021. Indeed, in many places, the declarations by PhRMA members executed at the end of September are temporally untethered to the Amended Complaint. *See* ECF Nos. 35-5, at ¶ 81; 35-6, at ¶ 78; 35-7, at ¶ 94; 35-8, at ¶ 88; 35-9, at ¶ 81; 35-13, at ¶ 8. Where it is impossible to tell whether the information reflects the state of the world on July 2, versus the world after the Amended Complaint, the information must be disregarded. *See Tex. Low Income Hous. Info. Serv. v. Carson*, 427 F. Supp. 3d 43, 52 (D.D.C. 2019) ("The court must

2

give . . . factual allegations closer scrutiny when resolving a Rule 12(b)(1) motion than would be required for a Rule 12(b)(6) motion . . . .") (quotation omitted).

*Second*, a "Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint." *Howard Univ. v. Watkins*, 857 F. Supp. 2d 67, 71 (D.D.C. 2012). In deciding a Rule 12(b)(6) motion, the Court may consider only (1) the complaint; (2) documents attached to or incorporated into the complaint; and (3) matters properly subject to judicial notice. *Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007); *see Deppner v. Spectrum Health Care Res., Inc.*, 325 F. Supp. 3d 176, 184 (D.D.C. 2018). The Court may *not* consider declarations proffered by a plaintiff containing "material extraneous" to these three categories. *Muttitt v. U.S. Cent. Command*, 813 F. Supp. 2d 221, 231 n.8 (D.D.C. 2011); *see Mattiaccio v. DHA Grp., Inc.*, 908 F. Supp. 2d 136, 139 (D.D.C. 2012) ("Plaintiff cannot amend his Complaint by way of declaration . . . .").

Defendants challenged the sufficiency of Plaintiffs' allegations about the Secretary's purported failure to consult with the U.S. Trade Representative and the Commissioner of Customs and Border Protection. Although the Amended Complaint referred to a single Freedom of Information Act ("FOIA") request in September 2020, Am. Compl. ¶ 58 n.24, PhRMA's counsel now discusses their back-and-forth with officials from four different agencies for as many FOIA requests through the end of September 2021, *see* ECF No. 35-13, at ¶¶ 9–30.[2] Those requests and the related, subsequent communications with officials at various agencies are "extraneous" to the Amended Complaint and thus cannot defeat a Rule 12(b)(6) motion.

Plaintiffs' reliance on *Haase v. Sessions*, 835 F.2d 902 (D.C. Cir. 1987), to circumvent black-letter pleading rules is misplaced. *See* Pls.' Opp'n, ECF No. 35, at 21, 42 n.23. *Haase* did not create an exception for Plaintiffs to establish standing based on events that post-

---

[2] Exemplifying why a motion to dismiss does not consider extraneous materials, since PhRMA's counsel's declaration, events concerning at least one FOIA request have further transpired, which indicate that agency records searches are not completed.

date the operative complaint. Nor did it permit a court to consider, on a Rule 12(b)(6) motion, materials extraneous to the complaint and not subject to judicial notice. *See* 835 F.2d at 907. Accordingly, the Court should reject any attempt by Plaintiffs to further amend their complaint via declaration, and cabin its Rule 12(b)(1) and (b)(6) inquiries only to the material that it may appropriately consider.

## II.   Without any imminent SIP authorization, Plaintiffs lack standing

Plaintiffs seek standing based on three different theories, all of which fail for lack of adequate injury. *First*, Plaintiffs allege standing based on future harms that might befall a member if a SIP is authorized and if certain drugs are then imported from Canada. *See* Pls.' Opp'n 18–19. Future harms suffice for standing only if they are imminent—*i.e.*, "certainly impending" or a "substantial risk" exists that the harm will occur. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 n.5 (2013).

*Second*, Plaintiffs allege costs certain members voluntarily incurred in anticipation of FDA someday authorizing a SIP. *See* Pls.' Opp'n 16–18. But those self-inflicted costs, no matter if commercially sensible, must be in reaction to a harm that is imminent. *See Clapper*, 568 U.S. at 416. *Third*, Plaintiffs allege purported procedural violations. *See* Pls.' Opp'n 13–16. That too turns on the adequacy of the other injuries Plaintiffs alleged. *See Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 921 (D.C. Cir. 2015); Pls.' Opp'n 16 n.10 (cross-referencing other injuries to satisfy procedural standing). Plaintiffs' standing thus hinges entirely on showing an imminent SIP authorization, which they cannot do.

### A.  No SIP authorization was (or is) imminent

Because no SIP has been authorized, Plaintiffs must bear the "more rigorous burden to establish standing" based on predictions about future events. *Arpaio v. Obama*, 797 F.3d 11, 21 (D.C. Cir. 2015). Plaintiffs implicitly concede they cannot satisfy the test for certainly impending injuries, arguing only that "there is a 'substantial risk' that FDA will approve the Florida SIP in the near future, and that approval of that SIP

will cause them further injury." Pls.' Opp'n 20. That approach requires Plaintiffs to
establish "*both* (i) a substantially increased risk of harm and (ii) a *substantial* probability
of harm with that increase taken into account." Defs.' Mem. 24 (quoting *Food & Water
Watch*, 808 F.3d at 914). "In applying the 'substantial' standard," the Court must be
"mindful . . . that the constitutional requirement of imminence . . . necessarily compels a
very strict understanding of what increases in risk and overall risk levels can count as
'substantial.'" *Food & Water Watch*, 808 F.3d at 915 (quoting *Public Citizen, Inc. v. Nat'l
Highway Traffic Safety Admin.*, 489 F.3d 1279, 1296 (D.C. Cir. 2007)). Plaintiffs'
speculation about the future actions of potential SIP Sponsors generally, of Florida
specifically, and of FDA, does not satisfy this strict understanding.

### 1.   The future, discretionary actions of putative SIP Sponsors and FDA are insurmountable obstacles to standing generally

Plaintiffs do not deny that the States and Tribes who comprise potential SIP
Sponsors are paradigmatic "independent actors not before the court." Defs.' Mem. 18
(quoting *Clapper*, 568 U.S. at 414 n.5). These States and Tribes alone—not FDA—bear
responsibility for formulating a Proposal. *See* 21 C.F.R. § 251.3(c)–(d) (containing all
components that a Sponsor "must" address). And they possess "unfettered" discretion
about how to attempt to satisfy the Rule's stringent regulatory criteria. *See* Defs.' Mem.
18, 21.

Plaintiffs' own declarations enumerate the challenges faced by potential Sponsors
in satisfying those requirements. For example, 21 C.F.R. § 251.3(e)(11) requires a
Sponsor to describe how it will ensure supply-chain security and satisfy all
pharmacovigilance responsibilities. Yet Plaintiffs assert that Sponsors likely do not
possess the "significant resources to perform these tasks, and likely lack the experience
necessary to do so effectively." ECF No. 35-5, at ¶ 33. Plaintiffs also question whether
Sponsors could make the "substantial investments and develop significant medical and
scientific expertise to determine whether a recall of drugs is necessary and to determine

if the recall is carried out effectively," ECF Nos. 35-5, at ¶ 35; 35-6, at ¶ 35, as a SIP would require, 21 C.F.R § 251.3(e)(13). And a Sponsor's explanation of how it will maintain the "strict confidence" of trade secrets, *id.* § 251.3(e)(16), must address "hacking attempts, which are commonplace in the pharmaceutical industry," and with which Importers allegedly "have little experience," ECF No. 35-5, at ¶ 46. All of this suggests that, in Plaintiffs' own view, State and Tribes face no easy task in amassing an adequate SIP Proposal.

Plaintiffs also inexplicably all but erase FDA from the SIP authorization process, even though the agency is the gatekeeper for the entire framework. *Compare* Defs.' Mem. 8–9, 21 (describing FDA's "rigorous and multifaceted" review), *with* Pls.' Opp'n (nowhere mentioning criteria for authorization). FDA is far from a rubber stamp. The agency may decide not to authorize even a facially complete Proposal due to, among other reasons, "potential safety concerns," "uncertainty that the SIP Proposal would adequately ensure the protection of public health," or uncertainty about its yielding "significant cost savings." 21 C.F.R. § 251.4(a). The timeline for review also is undefined, depending on "the quality and complexity of proposals and Agency resource constraints." 85 Fed. Reg. 62,094, 62,103 (Oct. 1, 2020).

Defendants explained why Plaintiffs cannot establish standing when their injury "turns on the speculative outcome of a third-party's licensing process." Defs.' Mem. 19–20. *Teva Pharmaceuticals USA, Inc. v. Azar*, 369 F. Supp. 3d 194 (D.D.C. 2019), found that an injury contingent on FDA's approval of a competitor's ANDA was not imminent because approval is "a demanding task" and "there is no guarantee that the FDA will approve *any* of the existing ANDAs." *Id.* at 200, 203. Plaintiffs halfheartedly try to distinguish *Teva*, Pls.' Opp'n 26 n.18, but its analysis applies here—a legal framework with detailed requirements to satisfy, a "demanding" FDA review process with no authorization guarantee, and no insight into "the status of the FDA's review," 369 F.

Supp. 3d at 200, 203. Indeed, SIP authorization is even *more* speculative: whereas ANDAs have been approved for decades, SIP authorization would be unprecedented.

Another member of this Court recently followed *Teva* in a similar case. *Ipsen Biopharmaceuticals, Inc. v. Becerra*, No. 20-CV-2437 (DLF), 2021 WL 4399531, at \*5–6 (D.D.C. Sept. 24, 2021). There too, the court reasoned that FDA's mere receipt of an ANDA would "g[i]ve no indication of whether the agency would" ultimately approve it. *Id.* at \*6 (quoting *Pfizer v. Shalala*, 182 F.3d 975, 978–79 (D.C. Cir. 1999)); *see also* Defs.' Mem. 40 (citing *Pfizer*). Because the plaintiff's injury would accrue only "if the FDA approves an ANDA for" a competitor—an outcome the court "cannot predict"—the court found that "Ipsen cannot establish an injury-in-fact that is 'certainly impending.'" *Ipsen*, 2021 WL 4399531, at \*7 (quoting *Clapper*, 568 U.S. at 409).

Plaintiffs argue nonetheless that courts "find standing even when a plaintiff's theory of harm rests on future government action." Pls.' Opp'n 23. But that is *only* when a plaintiff can establish harm that is actual or imminent, not merely possible. *Clapper*, 568 U.S. at 409. The authorities discussed by Plaintiffs highlight the insufficiencies of the harms alleged in the Amended Complaint. *See* Pls.' Opp'n 23–24.

In *Bennett v. Spear*, 520 U.S. 154 (1997), the Bureau of Reclamation had already stated that "it intended to operate . . . in compliance with the" challenged Biological Opinion of the Fish and Wildlife Service, *id.* at 159. Unlike *Bennett*, FDA has not committed to authorizing any particular proposals, thereby retaining its regulatory discretion to deny any deficient proposal. Similarly, in *Sherley v. Sebelius*, 610 F.3d 69 (D.C. Cir. 2010), there was "no doubt" the plaintiffs would face increased "competition for a share in a fixed amount of money," *id.* at 74. Here, it remains entirely uncertain whether or when FDA may authorize any "competitor," in the form of a SIP.[3] Thus, the

---

[3] Plaintiffs' string cite of cases is similarly inapposite. Pls.' Opp'n 24 n.17. Plaintiffs here are unable to make any "reasoned predictions" about whether or when FDA will

Rule's structure—reliant on future, discretionary decisions by States and FDA—generally precludes Plaintiffs from showing any particular authorization is imminent, especially when no SIP has ever been authorized.

### 2.   Plaintiffs cannot show imminent authorization of Florida's Proposal

Plaintiffs argue there is "a 'substantial risk' that FDA will approve the Florida SIP in the near future." Pls.' Opp'n 20.[4] "That conclusion, however, involves a significant degree of guesswork." *Trump v. New York*, 141 S. Ct. 530, 535 (2020) (per curiam). As with any SIP proposal, FDA's "eventual action will reflect both legal and practical constraints, making any prediction about future injury just that—a prediction." *Id.* at 536. Florida's Proposal is not liberated from these constraints and assured authorization, as Plaintiffs suggest, based on an ambiguous comment by Florida's governor at a press conference. That slender reed cannot bear the burden of standing.

Contrary to Plaintiffs' belief, Defendants do not contest the factual allegation that the governor spoke at a press conference on May 28, 2021. Defendants do contend, however, that amidst the press conference's back and forth, the precise context of the remarks are more equivocal than Plaintiffs' partial transcription suggests. *See* Am. Compl. ¶ 97. As the press-conference video reflects, the governor had been asked

---

authorize any particular SIP, a necessary prerequisite to establish "substantial risk" of economic injury, as in *Nat'l Ass'n of Broadcasters v. FCC*, 789 F.3d 165, 181 (D.C. Cir. 2015). They are not "*already* subject to the terms of the" challenged action like the plaintiffs in *Wellness Pharmacy, Inc. v. Becerra*, No. 20-CV-3082 (CRC), 2021 WL 4284567, at *13 (D.D.C. Sept. 21, 2021). And they overlook that *Center for Biological Diversity v. U.S. Dep't of Interior*, 563 F.3d 466 (D.C. Cir. 2009), also rejected a speculative chain of injury, in which the agency's successive assessments "could scuttle a leasing program if" it found certain statutory requirements not met, *id.* at 478–79.

[4] Defendants previously noted that if authorization of Florida's SIP is not imminent, "it follows that none of the other proposals mentioned in the Amended Complaint can support standing." Defs.' Mem. 23. Plaintiffs did not disagree in their Opposition.

whether "the hurdle is getting the okay from the FDA under Biden."[5] He responded, "From the Biden Administration, yeah," and later added "we haven't gotten the affirmative to do it."

Regardless, Plaintiffs overstate the case for deference to their interpretation of the remark. *See* Pls.' Opp'n 21. Allegations "of facts, historical or otherwise demonstrable," are taken "as true," but "allegations that are really predictions" are treated differently— and this was the governor's prediction. *Arpaio*, 797 F.3d at 21 (cleaned up). Courts similarly do not draw unreasonable inferences or make unwarranted assumptions "unsupported by the facts set out in the complaint." *Id.* at 19. Yet that is what Plaintiffs demand of an ambiguous reference to someone in the state government being told something by an unknown person in the federal government at an unknown time. Plaintiffs also expect this Court to assume that Florida communicated with someone at HHS or FDA who currently has decisionmaking authority over SIPs. *See* Pls.' Opp'n 1, 20–21; *see also* 21 C.F.R. § 10.85(k) (even a statement "given by an FDA employee orally . . . does not necessarily represent the formal position of FDA . . . and does not bind . . . the agency"). But Plaintiffs provide no basis for that assumption, dooming their attempt to establish imminent injury. Absent well-pleaded factual support, the Court cannot reasonably infer that the governor of Florida could opine on FDA's internal review process. *See Arpaio*, 797 F.3d at 19; *Tex. Low Income Hous.*, 427 F. Supp. 3d at 52. And it remains true that neither Florida's nor any other Proposal has been authorized.

Plaintiffs' inference is even more unwarranted in light of other circumstances that they neglect entirely. *After* the May press conference, Florida informed this Court, through an amicus brief, "that '[i]t is simply too soon to tell which, if any SIPs, will be approved or in what manner they may be approved.'" Defs.' Mem. 23 (quoting Fla.

---

[5] Plaintiffs did not cite the video containing the final quotation excerpted in Am. Compl. ¶ 97, but it is located here: https://www.youtube.com/watch?v=XiwRK5qh5i0. The relevant portion begins around the 28-minute mark.

Amicus Br., ECF No. 28, at 6). Plaintiffs themselves also have asserted "serious flaws" in that proposal. Defs.' Mem. 22 (quoting Am. Compl. ¶¶ 11, 112). Plaintiffs do not explain why this would not render speculative "the extent to which the FDA would be persuaded by the content of" Florida's Proposal. Defs.' Mem. 23 (quoting *R.J. Reynolds Tobacco Co. v. FDA*, 810 F.3d 827, 830 (D.C. Cir. 2016)).

Plaintiffs try to tip the scales in their favor by intimating that Florida would not prepare to implement its SIP Proposal if authorization were not imminent. *See* Pls.' Opp'n 20. However, speculation about a state's motivations for acting does not suffice for standing. *See Clapper*, 568 U.S. at 414 n.5. Lastly, Plaintiffs suggest that standing can be resolved later at summary judgment, *see* Pls.' Opp'n 21, but their failure now to survive this motion to dismiss precludes them from reaching summary judgment.

### B. Plaintiffs' voluntary expenditures cannot make a SIP authorization imminent

Plaintiffs attempt to bypass the lack of imminent SIP authorization by pointing to the costs that some members voluntarily incurred. *See* Pls.' Opp'n 16–18, 20. But this detour leads to a dead end. A plaintiff may *not* purchase standing by "incur[ing] certain costs as a reasonable reaction to a risk of harm." *Clapper*, 568 U.S. at 416. Those costs are relevant to standing only if they pertain to a "certainly impending" harm. *Id.* Otherwise, "an enterprising plaintiff would be able to secure a lower standard for Article III standing simply by making an expenditure based on a nonparanoid fear." *Id.*; *see Food & Water Watch*, 808 F.3d at 918–19 (plaintiffs who "have not plausibly alleged that they face a substantial increase in the risk of harm" could not establish standing through costs to avoid that harm). Indisputably, the Rule does not presently require Plaintiffs' members to do anything. With no SIP authorization imminent, Plaintiffs cannot get into court by preemptively — even if reasonably — spending resources to prepare for that contingency. *See id.*

Parties might "have standing to challenge laws that burden them with increased compliance costs," Pls.' Opp'n 17, but even so, "incurring costs in anticipation of non-imminent harm" will not suffice, *Clapper*, 568 U.S. at 422. The imminence requirement was met in *City of Waukesha v. EPA*, 320 F.3d 228 (D.C. Cir. 2003) (per curiam), because the city unquestionably had to comply with regulations directly "governing radionuclide levels in public water systems," *id.* at 231, 234. Similarly, in *New Jersey v. EPA*, 989 F.3d 1038 (D.C. Cir. 2021), the challenged rule's existence "directly implicate[d]" New Jersey's "ability to comply with its statutory obligations in administering" the Clean Air Act, *id.* at 1042, 1045. Here, SIP authorization is an intervening and contingent event that precludes a showing of imminence.

Finally, Plaintiffs complain that *if* a SIP is authorized, a member whose drugs are covered by the SIP would have 30 days to respond to an information request. *See* Pls.' Opp'n 17; *see also* Defs.' Mem. 9–10 (describing Pre-Import Requests, which only come after authorization). So long as no authorization is imminent though, any deadlines that a member might face *if or when* a SIP is authorized are irrelevant. Again, it is insufficient for standing that the expenditures are "a reasonable reaction to a risk of harm," *Clapper*, 568 U.S. at 416, or "sensible" as a business matter, *In re Sci. Applications Int'l Corp. (SAIC) Backup Tape Data Theft Litig.*, 45 F. Supp. 3d 14, 26 (D.D.C. 2014). And the Court does not even know whether any PhRMA member took these steps before the Amended Complaint, as they must have for standing. *See supra* p. 2.

### C. Procedural standing also fails for lack of imminent SIP authorization

Plaintiffs' last effort for standing lies in the two new counts they added to their Amended Complaint, alleging procedural injuries related to the Certification's issuance and the Rule's lack of notice-and-comment periods for each SIP Proposal. *See* Pls.' Opp'n 13–16. Plaintiffs have not plausibly alleged any omitted procedures that were required by law. *See infra* Section III. And they have not shown the necessary causal link

11

between the "substantive government decision that may have been wrongly decided because of the lack of" that procedure and "the plaintiff's particularized injury." *Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658, 668 (D.C. Cir. 1996) (en banc); *see* Pls.' Opp'n 14.

For their particularized injuries, Plaintiffs recycle the harms that might befall them upon further implementation of the Rule. *See* Pls.' Opp'n 14, 16 n.10. Thus, for causation, Plaintiffs must show that the Certification and the Rule "pose a substantial probability of a demonstrably increased risk of" those injuries ever occurring. *Fla. Audubon Soc'y*, 94 F.3d at 669; *see Food & Water Watch*, 808 F.3d at 915–19, 921 (plaintiffs who could not demonstrate substantially increased risk of harm lacked cognizable injury necessary for standing on procedural rights claim); *see also Narragansett Indian Tribal Historic Pres. Off. v. FERC*, 949 F.3d 8, 14 (D.C. Cir. 2020) (procedural rights plaintiff must identify "a substantial risk of injury to be redressed").

Beginning with the Certification, Plaintiffs allege that it may have wrongly issued because HHS purportedly did not provide "a meaningful opportunity to comment on" it. Pls.' Opp'n 13. But Plaintiffs acknowledge the Certification does not itself injure them; their injuries only derive from the Rule. *Id.* 16 n.12. They contend the Rule may have wrongly issued without an interagency consultation and without providing for notice-and-comment periods on each SIP Proposal. *Id.* 13. But the Rule only causes a particularized injury to Plaintiffs *if* FDA authorizes a SIP. Because SIP authorization is not imminent, Plaintiffs' bid for procedural standing fails too. *See Food & Water Watch*, 808 F.3d at 921 (holding that plaintiffs, who "failed to establish that they will suffer any cognizable injury" based on a lack of substantially increased risk of harm, necessarily could not establish procedural standing).

*Florida Audubon Society* is instructive. The plaintiffs there challenged a rule, issued without notice and comment, which expanded a tax credit. 94 F.3d at 662. Their injuries depended on independent third parties availing themselves of the tax credit, but the uncertainty and speculation about whether these events would transpire defeated

procedural standing. *See id.* at 669–70. Indeed, the court explained how "predicting the acts of even a single 'interest group' who is unrepresented in the instant litigation" could have sufficed to sever the causal links. *Id.* So too here. The causal links are severed by speculation about whether a State or Tribe will take the steps necessary to assemble a substantively complete SIP Proposal and whether FDA will authorize one.

### D.  At a minimum, CAHC and PSM should be dismissed

All three Plaintiffs here lack standing, but even if the Court finds that PhRMA has standing, CAHC and PSM do not. The Court may "par[e] down a case by eliminating plaintiffs who lack standing or otherwise fail to meet the governing jurisdictional requirements." *M.M.V. v. Garland*, 1 F.4th 1100, 1110–11 (D.C. Cir. 2021). The D.C. Circuit recently approved a ruling that "sensibly winnowed away" such plaintiffs. *Id.* And "Article III does not give federal courts the power to order relief to any uninjured plaintiff . . . ." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021).

Here, the generalized interest of CAHC and its members "in the proper interpretation and implementation of" 21 U.S.C. § 384, ECF No. 35-11, at ¶ 5, "will not do," *Arizonans for Off. English v. Arizona*, 520 U.S. 43, 64 (1997). Although CAHC would comment on SIP Proposals "if afforded the opportunity," ECF No. 35-11, at ¶ 5, standing is not "established by an inability to comment effectively or fully," *Defs. of Wildlife v. Perciasepe*, 714 F.3d 1317, 1325 (D.C. Cir. 2013). And CAHC alleges no injury to a "particularized interest" of the organization from the purported omission. *Fla. Audobon Soc'y*, 94 F.3d at 664. Indeed, CAHC alleges no perceptible impairment of its ability to provide services, as it must. *Food & Water Watch*, 808 F.3d at 919. Otherwise, the "increased risk" of harm to CAHC's members is facially short of the *substantially* increased risk of harm required by this Circuit. *Compare* ECF No. 35-11, at ¶ 11, *and* Am. Compl. ¶ 128, *with Food & Water Watch*, 808 F.3d at 915.

13

PSM suffers the same defects. PSM's "interest in the proper interpretation" of the law, ECF No. 35-10, at ¶ 7, is not cognizable, *Arizonans for Off. English*, 520 U.S. at 64. The mere inability of PSM and its members to comment on SIP Proposals, Am. Compl. ¶ 127, is unaccompanied by any particularized injury. Several PSM members, which are also trade associations, oppose drug importation from Canada, *see* ECF Nos. 35-2, at ¶ 14; 35-3, at ¶ 12; 35-4, at ¶ 12, but frustration of their organizational "objectives" is not enough, *Food & Water Watch*, 808 F.3d at 919. Two members may develop educational materials for their own members, *see* ECF Nos. 35-2, at ¶¶ 41–42; 35-3, at ¶ 45; neither indicates, however, that their "organizational activities have been perceptibly impaired in any way," *Food & Water Watch*, 808 F.3d at 921. The associations of drug distributors and pharmacists acknowledge that the Rule imposes *no* obligations on those entities unless they agree to participate, in some way, in a SIP. *See* ECF Nos. 35-2, ¶ 27; 35-3, at ¶ 25. Thus, they cannot specifically identify *any* member with standing. *See Pub. Citizen, Inc. v. Trump*, 297 F. Supp. 3d 6, 18 (D.D.C. 2018). Finally, any allegations of the Rule merely "increasing the risk" of injury to members remains patently deficient. ECF Nos. 35-2, at ¶ 31; 35-3, at ¶ 30; 35-4, at ¶ 25.

At bottom, CAHC and PSM are "lobbyist/advocacy group[s] . . . with no injury other than injury to [their] advocacy" and preferred policy goals. *Ctr. for L. & Educ. v. Dep't of Educ.*, 396 F.3d 1152, 1162 n.4 (D.C. Cir. 2005). The Court should dismiss them and pare down the case. *See M.M.V.*, 1 F.4th at 1110–11.

### III.  Plaintiffs have not plausibly alleged any procedural violations

Defendants explained why Plaintiffs' allegations of procedural omissions related to the Certification and the Rule were implausible. *See* Defs.' Mem. 27–33, 41–44. Despite that implausibility, Plaintiffs suggest their self-characterization of procedural omissions governs for purposes of standing. Pls.' Opp'n 16 n.11. But "[t]o demonstrate standing," "a procedural-rights plaintiff must *show* . . . that the defendant's acts omitted some

procedural requirement." *Fla. Audubon Soc'y*, 94 F.3d at 664–65 (emphasis added); *see Brownback v. King*, 141 S. Ct. 740, 749 (2021) ("a plaintiff must plausibly allege all jurisdictional elements"). The court does not *assume* that a procedural violation occurred when considering whether Plaintiffs met their standing burden. *See Fla. Audubon Soc'y*, 94 F.3d at 664 n.1 ("Any assumption as to the outcome of the litigation simply does not resolve the issues critical to a standing inquiry."); *Nat'l Ass'n of Home Builders v. U.S. Fish & Wildlife Serv.*, 786 F.3d 1050, 1052 (D.C. Cir. 2015) (affirming dismissal of claim that alleged procedural omissions but lacked a "plausible statutory basis"); *see* Defs.' Mem. 30 (citing cases). And in any event, because Plaintiffs' assertions of procedural rights are also reviewable under Rule 12(b)(6), they still must plausibly allege a viable claim for relief.

### A.  The Certification was not a rule, and Plaintiffs commented on it anyway

As HHS explained when issuing the Rule and the Certification, as well as in its opening brief, the Certification here is akin to a declaratory order under 5 U.S.C. § 554(e). *See* Defs.' Mem. 28–30; 85 Fed. Reg. at 62,114. Plaintiffs do not contest that "the choice whether to proceed by rulemaking or adjudication is primarily one for the agency regardless of whether the decision may affect agency policy and have general prospective application." *Chisholm v. FCC*, 538 F.2d 349, 364–65 (D.C. Cir. 1976) (citing *NLRB v. Bell Aerospace Co.*, 416 U.S. 267, 291-95 (1974)); *see* Defs.' Mem. 29–30. Nor do Plaintiffs deny that 21 U.S.C. § 384(*l*) left to the Secretary's discretion the manner and means of certifying effectiveness to Congress. *See* Defs.' Mem. 29-30 (comparing statutory language for issuance versus revocation of certification); *see also* 21 U.S.C. § 384(b) (requiring Secretary to "promulgate regulations . . . to import prescription drugs from Canada into the United States" but not to issue certification). Yet Plaintiffs insist that the Secretary can only issue the Certification through a rulemaking.

Plaintiffs' reliance on *Milk Industry Foundation v. Glickman*, 132 F.3d 1467 (D.C. Cir. 1998), is misplaced. The *Glickman* court focused on whether a particular finding by the Secretary of Agriculture constituted "agency action," an issue not disputed here. And crucially, in *Glickman*, the Secretary of Agriculture did not "explain[] why his Amplified Decision should not be understood as a rule." 132 F.3d at 1475. In contrast, HHS here has offered ample justification why the Certification is not a rule.

Plaintiffs next argue that the Certification satisfies the APA's definition of a rule, 5 U.S.C. § 551(4). *See* Pls.' Opp'n 35–36. However, the very attributes they cite are *also* consistent with the Certification being an "order," 5 U.S.C. § 551(6); *see* Pls.' Opp'n 33–34. An "agency statement," for example, surely includes the "final disposition" of HHS in the matter of 21 U.S.C. § 384's effectiveness. *See* 5 U.S.C. § 551(6) (defining "order," in part, as "the whole or part of a final disposition, whether affirmative, negative, injunctive, or declaratory in form"). An order may have "general prospective" applicability. *See Chisholm*, 538 F.2d at 364–65. It may be used to "affect agency policy." *Id.*; *Cent. Texas Tel. Co-op., Inc. v. FCC*, 402 F.3d 205, 210 (D.C. Cir. 2005) (order "may establish broad legal principles"). An order issued pursuant to an agency's delegated authority undoubtedly has "legal effect." 5 U.S.C. § 551(6). And the Secretary, in his "sound discretion," determined to "issue a declaratory order" about 21 U.S.C. § 384. 5 U.S.C. § 554(e); *see Chisholm*, 538 F.2d at 366 n.33 (cautioning against "too rigid an interpretation" of terminating controversy or removing uncertainty). Thus, Plaintiffs have not plausibly alleged the Secretary was required to issue the Certification as a rule, rather than exercising his discretion to issue the Certification as a declaratory order.[6]

Even assuming the Certification was a rule and the APA entitled Plaintiffs to an opportunity to comment, they had an opportunity and utilized it. Plaintiffs ignore the link between the NPRM and the Certification. *Compare* Pls.' Opp'n 36–37, *with* Defs.'

---

[6] Plaintiffs apparently abandon their claim that the NPRM was not validly issued. *See* Defs.' Mem. 42–43.

Case 1:20-cv-03402-TJK   Document 39   Filed 10/28/21   Page 25 of 35


Mem. 42. The NPRM explained how the Secretary proposed to make the certification under 21 U.S.C. § 384(*l*) "upon issuance of a final rule based on this proposal." 84 Fed. Reg. 70,796, 70,801 (Dec. 23, 2019). And the Secretary would make his certification decision "[a]fter consideration of comments received on this NPRM." *Id.* at 70,803. Plaintiffs and their members were well aware of, and submitted comments on, the NPRM. *See, e.g.*, Am. Compl. ¶ 11 & n.6; ECF Nos. 35-2, at ¶ 18 (commented on NPRM); 35-3, at ¶ 14 (same); 35-4, at ¶ 15 (same); 35-7, at ¶ 5 (same). Thus, Plaintiffs and their members were not denied a meaningful opportunity to comment on the data upon which the Secretary based his certification decision. *See* Defs.' Mem. 42.

Plaintiffs make a convoluted argument to preserve the claim. One sentence argues HHS did not provide "notice of all data on which the agency relies," so they could not meaningfully comment. Pls.' Opp'n 37. The next says HHS had "*no* data" to provide. *Id.* But Plaintiffs knew from the NPRM that the proposed Rule would form the basis for the Certification, and the Secretary considered comments on the NPRM in his certification decision. Plaintiffs may substantively disagree with the Secretary's decision, but as a procedural matter, they cannot plausibly allege denial of an opportunity to comment. *See Cent. Texas Tel. Co-op.*, 402 F.3d at 211 (even if agency action was a legislative rule and not a declaratory order, agency's procedures "sufficiently satisfied" 5 U.S.C. § 553 where plaintiffs had opportunity to comment on agency action (citing *U.S. Telecom Ass'n v. FCC*, 400 F.3d 29, 40 (D.C. Cir. 2005))); *Glickman*, 132 F.3d at 1472, 1475 (5 U.S.C. § 553 "satisfied" by Secretary issuing simple request for comment in Federal Register before making statutory finding).

### B.  A SIP authorization would be a license, not a rule

The SIP proposal and authorization process is a textbook example of agency licensing—a form of adjudication, *not* rulemaking. *See* Defs.' Mem. 30–31; *see also Nat'l Biodiesel Bd. v. EPA*, 843 F.3d 1010, 1018 (D.C. Cir. 2016) ("two-and-a-half-year process,

during which EPA frequently asked for new information and modifications to the proposal and CARBIO submitted several addenda, . . . was a straightforward instance of adjudication"); *Marcum v. Salazar*, 810 F. Supp. 2d 56, 72 (D.D.C. 2011), *vacated and remanded on other grounds*, 694 F.3d 123 (D.C. Cir. 2012) (permits were adjudications, not rulemakings, because they involved a "specific set of facts on behalf of a specific group of permit applicants," which were "evaluated . . . against the applicable regulatory standards"). Although Plaintiffs now claim that a SIP changes the statutory and regulatory regime, Pls.' Opp'n 38, the case they cite— *Mendoza v. Perez*, 754 F.3d 1002 (D.C. Cir. 2014)—demonstrates why that is not true here.

*Mendoza* involved a challenge to Labor Department guidance letters that, among other things, "impose[d] different minimum wage requirements and provide[d] lower standards for employer-provided housing" for certain herding jobs. *Id.* at 1009. The court held the letters were legislative, not interpretive, rules because they "*change* the regulatory scheme for herding operations," which otherwise "would be subject to the standards found in 20 C.F.R. part 655." *Id.* at 1025 (emphasis added). By contrast, SIP Proposals must satisfy the criteria in 21 C.F.R. § 251.3; are evaluated under 21 C.F.R. § 251.4; and if authorized, must operate in accordance with 21 C.F.R. Part 251 and the Federal Food, Drug, and Cosmetic Act. *See* 85 Fed. Reg. at 62,121. Any obligations of manufacturers or other third parties derive from these same authorities, *not* from "a SIP directly." Pls.' Opp'n 38; *see, e.g.*, 21 U.S.C. § 384(e), (h) (discussing manufacturer responsibilities); 21 C.F.R. §§ 251.5, 251.14(b), 251.16 (same). Thus, unlike in *Mendoza*, SIPs adhere to—but do not change or circumvent—regulatory provisions.

Plaintiffs cannot contest that, in another adjudicatory hallmark, any authorization "'applies only to the' particular SIP"; no other applicant "could avail itself of the [SIP] without making a separate application to" FDA. Defs.' Mem. 31 (quoting *Nat'l Biodiesel Bd.*, 843 F.3d at 1018). Instead, they argue that a SIP "broadly impact[s] the public as well as numerous manufacturers nationwide." Pls.' Opp'n 38. But many licensing

decisions have derivative effects on others without becoming rulemakings. For example, FDA's decision to approve an NDA, *see* 21 U.S.C. § 355(d)–(e), impacts the nationwide ability of distributors to distribute the drug, physicians to prescribe it, patients to take it, and potentially competitors to enter the market.[7] And no one (including the drugmakers in this case) believes those decisions are anything but informal adjudications. *See Apotex, Inc. v. FDA*, 226 F. App'x 4, 5 (D.C. Cir. 2007).

As a fallback, Plaintiffs contend that 5 U.S.C. § 555(b) affords them a right to participate directly in FDA's SIP review process, even if SIPs are not rules. *See* Pls.' Opp'n 38–40. By its plain terms though, the language of section 555(b) is not "blindly absolute." Defs.' Mem. 31 (quoting *Easton Util. Comm'n v. Atomic Energy Comm'n*, 424 F.2d 847, 852 (D.C. Cir. 1970)). Section 555(b) is limited by the agency's assessment of how best to maintain "the orderly conduct of public business." As a result, "[c]ourts have long accorded agencies broad discretion in fashioning rules to govern public participation." *Nichols v. Bd. of Trustees of Asbestos Workers Loc. 24 Pension Plan*, 835 F.2d 881, 897 (D.C. Cir. 1987).

Contrary to Plaintiffs' suggestion, FDA has not precluded Plaintiffs, their members, or anyone else from submitting views about a SIP. Rather, FDA's citizen petition process "preserve[s] the participation opportunities of interested persons." *Nichols*, 835 F.2d at 897. This established process permits anyone to request that FDA take (or refrain from taking) any form of action regarding a SIP. *See* Defs.' Mem. 32 (citing 21 C.F.R. § 10.25(a), and 85 Fed. Reg. at 62,121–22). Analogously, interested parties often use citizen petitions to present their views regarding NDAs or ANDAs under review. *See, e.g.*, *ViroPharma, Inc. v. Hamburg*, 898 F. Supp. 2d 1, 12 n.11 (D.D.C. 2012) ("When the FDA is considering an ANDA, those with rights to or scientific knowledge of the innovator

---

[7] *See, e.g.*, 21 U.S.C. § 355(c)(3)(E)(ii), (j)(5)(F)(ii) (five-year exclusivity for new drug products); *id*. §§ 360bb, 360cc (seven-year exclusivity for "orphan drugs").

drug may provide technical information relating to the generic drug's bioequivalence by filing a 'citizen petition'").

Plaintiffs' characterization of the citizen petition process as collateral and therefore deficient, *see* Pls.' Opp'n 40, is belied by their use of that process to comment on pending SIP Proposals. Tellingly, the cases they cite to support that argument are readily distinguishable, involving agency failures to accept public comments on rulemakings. *See New Jersey v. EPA*, 626 F.2d 1038, 1049 (D.C. Cir. 1980); *N. Mariana Islands v. United States*, 686 F. Supp. 2d 7, 17–18 (D.D.C. 2009). Thus, Plaintiffs have not plausibly alleged that FDA's decision to let them comment on SIPs via the agency's citizen petition process violated the APA.

### C. A plausible claim requires more than speculation about a lack of interagency consultation

Turning to the interagency consultation requirement, as explained above, the evidentiary record for this motion consists of the allegations in the Amended Complaint. *See supra* p. 3. Although Plaintiffs allege they have not seen evidence the consultation occurred, that is unsurprising—nothing required the Secretary to publicize it. Thus, Plaintiffs' inference of a failure to consult was "unsupported by the facts" in the complaint. *Arpaio*, 797 F.3d at 19; *see* Defs.' Mem. 33, 44. And contrary to Plaintiffs' gloss, *see* Pls.' Opp'n 42, Defendants cited the presumption of regularity not to suggest the consultation issue was permanently shielded from review, but to highlight the factual burden Plaintiffs must overcome. To reasonably allege the Secretary did not undertake the consultation, Plaintiffs need more than a guess.

### IV. This case remains unripe at least until FDA authorizes a SIP

Plaintiffs question the vitality of the prudential ripeness doctrine. Pls.' Opp'n 27–28. It is, in fact, alive and well in the Supreme Court and this Circuit. *See, e.g., New York*, 141 S. Ct. at 535; *Cause of Action Inst. v. DOJ*, 999 F.3d 696, 704 (D.C. Cir. 2021)

20

(dismissing challenge as not ripe for review); *Bellinger v. Bowser*, No. CV 17-2124 (TJK), 2018 WL 4705808, at *3 (D.D.C. Sept. 30, 2018). And it applies to warrant dismissal here.

### A. These agency actions are not fit for review absent further implementation

Plaintiffs' fitness argument begins with an omission. Plaintiffs excised the introductory clause—"Among other things"—from their quotation of *Atlantic States Legal Foundation, Inc. v. EPA*, 325 F.3d 281, 284 (D.C. Cir. 2003), which enumerated criteria for the fitness inquiry. *Compare* Defs.' Mem. 34*, with* Pls.' Opp'n 28. The omitted phrase indicates that the list is illustrative. *See* Defs.' Mem. 35. Indeed, the D.C. Circuit has articulated additional considerations: "[W]hen an agency decision may never have 'its effects felt in a concrete way by the challenging parties,' the prospect of entangling ourselves in a challenge to such a decision is an element of the fitness determination as well." *Devia v. Nuclear Regul. Comm'n*, 492 F.3d 421, 424 (D.C. Cir. 2007) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148–49 (1967)); *see also* Defs.' Mem. 33–35.

That principle accords with the Supreme Court's repeated admonition that "[a] claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998). When an Executive Branch policy "may not prove feasible to implement in any manner whatsoever, let alone in a manner substantially likely to harm any of the plaintiffs here," it is not ripe for review. *New York*, 141 S. Ct. at 535. Plaintiffs do not address this case law, though it plainly applies here. Uncertainty surrounds whether or when FDA will authorize a particular SIP. Plaintiffs themselves describe the challenges faced by potential SIP Sponsors. Thus, like in *New York*, implementation of the Rule may never prove feasible, undercutting its fitness for generalized review. *See State Farm Mut. Auto. Ins. Co. v. Dole*, 802 F.2d 474, 479 (D.C. Cir. 1986) (court may deem a matter unfit for review if it believes "resolution of the dispute is likely to prove unnecessary").

Remarkably, Plaintiffs also sidestep the legion of Supreme Court and D.C. Circuit cases recognizing that "wholesale" challenges to "broad regulations" generally are unripe before "the scope of the controversy has been reduced to more manageable proportions, and its factual components fleshed out, by some concrete action applying the regulation to the [plaintiff's] situation in a fashion that harms or threatens to harm him." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 891 (1991); Defs.' Mem. 36–37 (quoting *id.*; collecting cases). Instead, Plaintiffs narrowly insist that their claims raise "purely legal issues" that challenge final agency action under the APA. *See* Pls.' Opp'n 28-29, 31.

Plaintiffs, emphasizing their procedural claims, unduly simplify their case. The Amended Complaint's six major claims and dozens of sub-claims raise legal *and* factual complexities. For example, Plaintiffs challenge whether and how the Rule could achieve the required "significant reduction in the cost of covered products . . . to the American consumer." Am. Compl. ¶ 156. That issue is a critical and highly fact-specific element of the SIP proposal and review process. *See* 21 C.F.R. §§ 251.3(d)(9), 251.4(a). Plaintiffs also question the Rule's ability to protect public health and safety. Am. Compl. ¶ 167. Again, numerous regulatory criteria address a proposal's ability to ensure public health and safety, and it is a primary focus of FDA's review. 21 C.F.R. §§ 251.3(d), 251.4(a). Thus, presentation of these issues within the context of an authorized SIP "would 'significantly advance [the court's] ability to deal with'" them. Defs.' Mem. 39 (quoting *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 812 (2003)).[8]

And it is well established that even purely legal challenges to final agency actions may not be ripe for review. *See* Defs.' Mem. 34-35 (discussing *Nat'l Park Hosp. Ass'n*, 538 U.S. at 812; collecting cases). Not every APA claim is automatically ripe either. *See* Defs.' Mem. 36–37 (citing cases). Indeed, "[g]uided by this instruction," the D.C. Circuit "has

---

[8] Alternatively, if the Court finds a particular claim ripe for review but others unripe, it still should dispose of the unripe claims. *See, e.g.*, *State Farm*, 802 F.2d at 480–81, 485 (dismissing most claims as unripe but adjudicating one ripe claim).

held that where the agency retains substantial discretion to implement its decision, the decision is not ripe for judicial review until it has been implemented in particular circumstances." *Sprint Corp. v. FCC*, 331 F.3d 952, 956 (D.C. Cir. 2003).

Plaintiffs' cited cases do not support discarding this standard approach. *See* Pls.' Opp'n 30. Unlike *Ciox Health, LLC v. Azar*, 435 F. Supp. 3d 30, 53 (D.D.C. 2020), Defendants have made plain what additional "decisionmaking" is necessary to implement the Rule—FDA's SIP authorization. The uncertainty about those future decisions also differentiates this case from *Wellness Pharmacy*, in which one plaintiff was "*already* subject to the terms of the" challenged action and "'the legal consequences' were fixed . . . for at least some plaintiffs." 2021 WL 4284567, at *13. Without SIP authorization, no Plaintiff or its member knows they will face legal consequences. And *State Farm* actually held numerous challenges to a final rule *not* ripe, 802 F.2d at 480–81, with a single exception for an issue on which "no future agency action or proceeding looms on the horizon that would permit [the court] to test the effect of the agency's decision in a more concrete setting," *id.* at 485; *see also Cablevision Sys. Corp. v. FCC*, 649 F.3d 695, 713–14 (D.C. Cir. 2011) (ruling claim was unripe because court had "no way of knowing whether the Commission's new restrictions, which it will base on case-by-case determinations, will even apply to petitioners").[9]

The judicial intervention Plaintiffs seek now "would inappropriately interfere with [FDA's] further administrative action." Defs.' Mem. 38 (quoting *Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726, 733 (1998)). The Supreme Court has stressed the importance of "[l]etting the Executive Branch's decisionmaking process run its course" before subjecting policies to judicial review. *New York*, 141 S. Ct. at 536. Those principles commend deferring review while FDA considers whether, and when, to authorize any

---

[9] *CSI Aviation Servs., Inc. v. Dep't of Transp.*, 637 F.3d 408 (D.C. Cir. 2011), did not discuss ripeness at all. Rather, it reviewed an agency "order" that "effectively declared [a] company's operations unlawful." *Id.* at 412, 414.

SIP. If the agency never takes that step, the Court will have prudently conserved its "scarce resources" from judicial "shadow boxing," preserving the interests of both the executive and judiciary branches. Defs.' Mem. 35 (quoting *Devia*, 492 F.3d at 424–25).

### B. Postponing review causes Plaintiffs no immediate hardship

Powerful rationales weigh against this case's fitness for review, so "to outweigh [those] institutional interests . . . , the hardship to those affected by the agency's action must be immediate and significant." *Devia*, 492 F.3d at 427 (quotation omitted). The requirement that a plaintiff face an *immediate* choice between compliance and violation of a challenged regulation pervades ripeness jurisprudence. *See* Defs.' Mem. 39 (citing cases). Correspondingly, a case is unripe when "the source of any injury to the plaintiffs is the action that" an agency "*might* take in the future . . . not the [policy] itself in the abstract." Defs.' Mem. 40 (quoting *New York*, 141 S. Ct. at 536).

Plaintiffs cannot refute that, as a legal matter, neither the Certification nor the Rule presently "require them to do anything or to refrain from doing anything." Defs.' Mem. 39 (quoting *New York*, 141 S. Ct. at 536). Plaintiffs simply point back to the voluntary preparations some members have taken in anticipation that a SIP covering their drugs might be authorized. *See* Pls.' Opp'n 31–32. But those choices no more manufacture ripeness than they did standing. *See supra* pp. 10–11. Preparations in the face of "mere uncertainty as to the validity of a legal rule" do not "constitute[] a hardship." *Nat'l Park Hosp. Ass'n*, 538 U.S. at 811; *see id.* ("[C]ourts would soon be overwhelmed with requests for what essentially would be advisory opinions because most business transactions could be priced more accurately if . . . existing legal uncertainties were resolved.").

Plaintiffs' proffered cases do not compel a contrary conclusion. *See* Pls.' Opp'n 31–32. In *Pacific Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190 (1983), the Court held ripe a challenge by utility companies to a statewide "moratorium on the certification of new nuclear plants," *id.* at 198, 201–02. The utilities did not need

to wait to see if the moratorium would be lifted later because it immediately and directly impacted their current operations. *See id.* Simultaneously, the Court held that a challenge to a separate provision was *unripe* because its applicability depended on future agency determinations "on a case-by-case basis." *Id.* at 203. The Court held that review of that provision should be deferred, despite continued legal "uncertainty." *Id.* And *Nat'l Ass'n of Home Builders v. U.S. Army Corps of Eng'rs*, 417 F.3d 1272 (D.C. Cir. 2005), involved the kind of direct and immediate consequences of the challenged action—"some builders can discharge [material into navigable waters] immediately, others cannot"—that are not created by the Rule, *id.* at 1279–80, 1284.

Lastly, Plaintiffs improperly "seek to assert the hardships of States that are not before the court." *State Farm*, 802 F.2d at 482; *see* Pls.' Opp'n 32. And they complain of possibly having to revive their claims on an expedited basis in the future. *Id.* But they undeniably may "return[] to court when the controversy ripens," and "the possibility of judicial stays and expedited review" militates *against* a hardship from deferring review. Defs.' Mem. 40–41 (quoting *Atl. States Legal Found.*, 325 F.3d at 285, and *Sprint*, 331 F.3d at 958). Unlike *Blanchette v. Conn. Gen. Ins. Corps.*, 419 U.S. 102, 142–45 (1974), this case does not present the extraordinary circumstances of a future injurious action that both "is virtually a certainty" and "in practical effect will be irreversible once it is made."

Plaintiffs plainly prefer adjudication of their "generalized challenge" in its entirety, and now. *Toilet Goods Ass'n, Inc. v. Gardner*, 387 U.S. 158, 163–64 (1967). But where the Court has "no idea whether or when" the Rule might be applied to them, no "specific application" of the Rule yet exists, and "no irremediable adverse consequences flow from requiring a later challenge," *id.*, the balance tips against them. Their case is unripe.

<h2 style="text-align:center">CONCLUSION</h2>

For the reasons above and in Defendants' opening brief, the Court should grant Defendants' motion to dismiss.

25

October 28, 2021                    Respectfully submitted,

                                    /s/ James W. Harlow
                                    JAMES W. HARLOW
                                    Senior Trial Attorney

                                    KIMBERLY R. STEPHENS
                                    Trial Attorney
                                    Consumer Protection Branch
                                    Civil Division
                                    U.S. Department of Justice
                                    PO Box 386
                                    Washington, DC  20044-0386
                                    (202) 514-6786 (Harlow)
                                    (202) 305-0033 (Stephens)
                                    (202) 514-8742 (fax)
                                    James.W.Harlow@usdoj.gov
                                    Kimberly.R.Stephens@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that this document, filed through the CM/ECF system, will be sent via electronic mail to the registered participants as identified on the Notice of Electronic Filing.

October 28, 2021                          /s/ James W. Harlow
                                          JAMES W. HARLOW