# Exhibit A

| | |
|---|---|
| **From:** | Hirshorn, Rebecca (HHS/IOS) |
| **To:** | Wise, Julie A. EOP/OMB |
| **Cc:** | Hirsch, Quinn N. EOP/OMB; Fischbach, Aaron (OS/IOS) |
| **Subject:** | RE: For EOP review: FDA Importation final rule and guidance |
| **Date:** | Friday, September 18, 2020 3:51:00 PM |

Hi Julie—standing by….

**From:** Wise, Julie A. EOP/OMB <​(b)(6)​>
**Sent:** Friday, September 18, 2020 3:06 PM
**To:** Fischbach, Aaron (OS/IOS) <Aaron.Fischbach@hhs.gov>
**Cc:** Hirsch, Quinn N. EOP/OMB <​(b)(6)​>; Hirshorn, Rebecca (HHS/IOS) <Rebecca.Hirshorn@hhs.gov>
**Subject:** RE: For EOP review: FDA Importation final rule and guidance

Thanks – according to Satya, FDA might want to have a call with DOJ to discuss their comments.  I've reached out to DOJ to see if we can pin down a few times so we aren't scrambling on Monday.  I'll circle back when I have DOJ's availability.

> **From:** Fischbach, Aaron (OS/IOS) <Aaron.Fischbach@hhs.gov>
> **Sent:** Friday, September 18, 2020 2:30 PM
> **To:** Wise, Julie A. EOP/OMB <​(b)(6)​>
> **Cc:** Hirsch, Quinn N. EOP/OMB <​(b)(6)​>; Hirshorn, Rebecca (HHS/IOS) <Rebecca.Hirshorn@hhs.gov>
> **Subject:** RE: For EOP review: FDA Importation final rule and guidance
>
> Will do.   And depending on timing, Rebecca may be sending them.  I'm traveling and offline a bit on Monday.

> **From:** Wise, Julie A. EOP/OMB <​(b)(6)​>
> **Sent:** Friday, September 18, 2020 2:17 PM
> **To:** Fischbach, Aaron (OS/IOS) <Aaron.Fischbach@hhs.gov>
> **Cc:** Hirsch, Quinn N. EOP/OMB (b)(6)
> **Subject:** RE: For EOP review: FDA Importation final rule and guidance
>
> Hi Aaron,
>
> Would you please CC Quinn when these FDA documents come back over?  If I'm out of pocket when the documents arrive, Quinn will keep them moving.
>
> Thanks,
> Julie

**From:** Fischbach, Aaron (OS/IOS) <Aaron.Fischbach@hhs.gov>
**Sent:** Friday, September 18, 2020 1:58 PM
**To:** Wise, Julie A. EOP/OMB ⟨(b)(6)⟩
**Subject:** RE: For EOP review: FDA Importation final rule and guidance

Checking back on this.

As far as timing, I expected a revised rule and guidance Monday afternoon.

---

**From:** Fischbach, Aaron (OS/IOS)
**Sent:** Friday, September 18, 2020 9:13 AM
**To:** Wise, Julie A. EOP/OMB <⟨(b)(6)⟩
**Subject:** Re: For EOP review: FDA Importation final rule and guidance

GM.
FDA is asking... nothing from USTR?

Sent from my iPhone

> On Sep 17, 2020, at 6:23 PM, Wise, Julie A. EOP/OMB ⟨(b)(6)⟩ wrote:
>
>  No need to monitor this evening. I gave a hard stop of 5pm, so I am not expecting any additional comments.
>
> Sent from my iPhone - please excuse brevity and typos.
>
> > On Sep 17, 2020, at 18:15, Fischbach, Aaron (OS/IOS) <Aaron.Fischbach@hhs.gov> wrote:
> >
> > Received.  Thanks, Julie.  Do I need to monitor this evening?
> >
> > ---
> >
> > **From:** Wise, Julie A. EOP/OMB
> > <⟨(b)(6)⟩
> > **Sent:** Thursday, September 17, 2020 5:44 PM
> > **To:** Fischbach, Aaron (OS/IOS)
> > <Aaron.Fischbach@hhs.gov>
> > **Subject:** RE: For EOP review: FDA Importation final rule and guidance

Aaron,

Comments [ (b)(5) ] on the **FDA Drug Importation documents** are attached.

Given the interest in expedited timing, when you have a sense of next steps please let me know when we are likely to see revisions/responses from FDA.

Thanks,
Julie

---

**From:** Fischbach, Aaron (OS/IOS) <Aaron.Fischbach@hhs.gov>
**Sent:** Thursday, September 10, 2020 12:38 PM
**To:** Wise, Julie A. EOP/OMB
< (b)(6) >
**Subject:** For EOP review: FDA Importation final rule and guidance

Attached for review is the package that includes the rule and the guidance.  I will also get these uploaded to ROCIS.

Please let me know when you expect to pass back.


Aaron Fischbach
HHS Exec Sec Senior Policy Coordinator
(202) 205-8644 Direct |  (b)(6)  Cell
Please consider the environment before printing this e-mail.

| | |
|---|---|
| **From:** | Fischbach, Aaron (OS/IOS) |
| **To:** | Chukwudebe, Nnaemeka (FDA/OC) |
| **Cc:** | Seery, Diane (FDA/OC); Roth, Lauren (FDA/OC); Rooths, Tarita (FDA/OC) |
| **Subject:** | Re: Comments Received: FDA Importation final rule and guidance |
| **Date:** | Friday, September 18, 2020 3:51:21 PM |
| **Attachments:** | image001.png |

Yes

Sent from my iPhone

> On Sep 18, 2020, at 3:47 PM, Chukwudebe, Nnaemeka
> <Nnaemeka.Chukwudebe@fda.hhs.gov> wrote:

> Hi Aaron,

> So, this confirms that the Comments we have received are all we are going to
> get?  No additional comments?  Great to hear.

> Sincerely,

> **Emeka Chukwudebe**
> **Regulations Policy and Management Staff (RPMS)**
> **Office of Policy**
> **U.S. Food and Drug Administration**
> Tel: (240) 472-2915
> nnaemeka.chukwudebe@fda.hhs.gov

> <image001.png>


> <image002.jpg>

> <image003.jpg>

> <image004.jpg>

> <image005.jpg>

> <image006.jpg>

---

**From:** Fischbach, Aaron (OS/IOS) <Aaron.Fischbach@hhs.gov>
**Sent:** Friday, September 18, 2020 3:40 PM
**To:** Chukwudebe, Nnaemeka <Nnaemeka.Chukwudebe@fda.hhs.gov>
**Cc:** Seery, Diane <Diane.Seery@fda.hhs.gov>; Roth, Lauren



<Lauren.Roth@fda.hhs.gov>; Rooths, Tarita <Tarita.Rooths@fda.hhs.gov>
**Subject:** Re: Comments Received: FDA Importation final rule and guidance

OIRA response:

is FDA asking because they received some informal feedback from USTR?  The comments we received are the comments we provided and there were no comments from USTR.

Sent from my iPhone

> On Sep 18, 2020, at 11:48 AM, Fischbach, Aaron (OS/IOS) <Aaron.Fischbach@hhs.gov> wrote:
>
> Still checking.  In the meantime, I received the following from OMB:
>
> OPM just reached out to find out what impact – if any – the final rule might have on the FEHB.  OPM has not reviewed the rule; they saw that it was under review and reached out to OIRA.
>
> Please do not send me "thank you" emails.  We all receive enough emails.
>
> Aaron Fischbach
> HHS Exec Sec Senior Policy Coordinator
> (202) 205-8644 Direct   (b)(6)   Cell
>  Please consider the environment before printing this e-mail.

**From:** Chukwudebe, Nnaemeka <Nnaemeka.Chukwudebe@fda.hhs.gov>
**Sent:** Friday, September 18, 2020 8:50 AM
**To:** Fischbach, Aaron (OS/IOS) <Aaron.Fischbach@hhs.gov>
**Cc:** Seery, Diane (FDA/OC) <Diane.Seery@fda.hhs.gov>; Roth, Lauren (FDA/OC) <Lauren.Roth@fda.hhs.gov>; Rooths, Tarita (FDA/OC) <Tarita.Rooths@fda.hhs.gov>
**Subject:** Comments Received: FDA Importation final rule and guidance

Good morning Aaron,

We confirm receiving comments from EOP, DOJ, SBA and DHS and we are currently addressing the comments received.  So far, we have not received comments from USTR which we understood was reviewing the documents.  Is there anyway we can find out if/when

we will receive comments from USTR?  Thank you.

Sincerely,

**Emeka Chukwudebe**
**Regulations Policy and Management Staff (RPMS)**
**Office of Policy**
**U.S. Food and Drug Administration**
Tel: (240) 472-2915
nnaemeka.chukwudebe@fda.hhs.gov

<image001.png>

<image002.jpg>

<image003.jpg>

<image004.jpg>

<image005.jpg>

<image006.jpg>

---

**From:** Fischbach, Aaron (OS/IOS) <Aaron.Fischbach@hhs.gov>
**Sent:** Thursday, September 17, 2020 6:40 PM
**To:** Seery, Diane <Diane.Seery@fda.hhs.gov>; Chukwudebe, Nnaemeka
<Nnaemeka.Chukwudebe@fda.hhs.gov>; Roth, Lauren
<Lauren.Roth@fda.hhs.gov>
**Subject:** RE: For EOP review: FDA Importation final rule and guidance

Not clear.  If so, it will be tomorrow.

---

**From:** Seery, Diane <Diane.Seery@fda.hhs.gov>
**Sent:** Thursday, September 17, 2020 6:40 PM
**To:** Fischbach, Aaron (OS/IOS) <Aaron.Fischbach@hhs.gov>; Chukwudebe,
Nnaemeka (FDA/OC) <Nnaemeka.Chukwudebe@fda.hhs.gov>; Roth,
Lauren (FDA/OC) <Lauren.Roth@fda.hhs.gov>
**Subject:** RE: For EOP review: FDA Importation final rule and guidance

Are we expecting any more comments or is this all?

Thank you,
Diane

**Diane M. Seery, B.S., J.D.**
Regulatory Counsel
Office of the Commissioner/ Office of Policy
Regulations Policy and Management Staff (RPMS)
U.S. Food and Drug Administration
Tel: 240-507-8466
Diane.Seery@fda.HHS.gov

---

**From:** Fischbach, Aaron (OS/IOS) <Aaron.Fischbach@hhs.gov>
**Sent:** Thursday, September 17, 2020 6:15 PM
**To:** Chukwudebe, Nnaemeka <Nnaemeka.Chukwudebe@fda.hhs.gov>;
Seery, Diane <Diane.Seery@fda.hhs.gov>; Roth, Lauren
<Lauren.Roth@fda.hhs.gov>
**Subject:** FW: For EOP review: FDA Importation final rule and guidance

Comments (from EOP, DOJ, SBA and DHS) on the FDA Drug Importation
documents are attached.

| | |
|---|---|
| **From:** | Fischbach, Aaron (OS/IOS) |
| **To:** | Wise, Julie A. EOP/OMB |
| **Subject:** | RE: For EOP review: FDA Importation final rule and guidance |
| **Date:** | Tuesday, September 15, 2020 4:11:00 PM |

You rock.

**From:** Wise, Julie A. EOP/OMB <░░░░░░░░(b)(6)░░░░░░░░>
**Sent:** Tuesday, September 15, 2020 4:10 PM
**To:** Fischbach, Aaron (OS/IOS) <Aaron.Fischbach@hhs.gov>
**Subject:** Re: For EOP review: FDA Importation final rule and guidance

Yes.

Sent from my iPhone - please excuse brevity and typos.


> On Sep 15, 2020, at 16:08, Fischbach, Aaron (OS/IOS) <Aaron.Fischbach@hhs.gov>
> wrote:
>
>
> I think this came up on the proposed, but FDA just raised that USTR and CBP are
> required by the statute to be consulted. Are they reviewing these drafts?

**From:** Wise, Julie A. EOP/OMB <░░░░░░(b)(6)░░░░░░>
**Sent:** Tuesday, September 15, 2020 11:06 AM
**To:** Fischbach, Aaron (OS/IOS) <Aaron.Fischbach@hhs.gov>
**Subject:** RE: For EOP review: FDA Importation final rule and guidance

Hoping to send comments before the weekend but that timing may need to push to next week if reviewers need more time with the materials.

> **From:** Fischbach, Aaron (OS/IOS) <Aaron.Fischbach@hhs.gov>
> **Sent:** Tuesday, September 15, 2020 10:58 AM
> **To:** Wise, Julie A. EOP/OMB <░░░░░░(b)(6)░░░░░░>
> **Subject:** RE: For EOP review: FDA Importation final rule and guidance
>
> GM.
> Lots of questions about the ETA for a passback. Anything you can share?

**From:** Wise, Julie A. EOP/OMB <░░░░░░(b)(6)░░░░░░>
**Sent:** Thursday, September 10, 2020 2:07 PM
**To:** Fischbach, Aaron (OS/IOS) <Aaron.Fischbach@hhs.gov>
**Subject:** RE: For EOP review: FDA Importation final rule and guidance

Aaron,
You can ignore my last email – the guidance is now in ROCIS.
Thanks,
Julie

> **From:** Wise, Julie A. EOP/OMB
> **Sent:** Thursday, September 10, 2020 1:39 PM
> **To:** 'Fischbach, Aaron (OS/IOS)' <Aaron.Fischbach@hhs.gov>
> **Subject:** RE: For EOP review: FDA Importation final rule and guidance

Aaron,

I see the rule and RIA in ROCIS but not the guidance and associated analysis and NOA. Will the guidance package be submitted separately?

**From:** Fischbach, Aaron (OS/IOS) <Aaron.Fischbach@hhs.gov>
**Sent:** Thursday, September 10, 2020 12:38 PM
**To:** Wise, Julie A. EOP/OMB <Julie_A_Wise@ (b)(6)
**Subject:** For EOP review: FDA Importation final rule and guidance

Attached for review is the package that includes the rule and the guidance. I will also get these uploaded to ROCIS.

Please let me know when you expect to pass back.

Aaron Fischbach
HHS Exec Sec Senior Policy Coordinator
(202) 205-8644 Direct |      (b)(6)      Cell
🖨 Please consider the environment before printing this e-mail.

| | |
|---|---|
| **From:** | Wise, Julie A. EOP/OMB |
| **To:** | Fischbach, Aaron (OS/IOS) |
| **Subject:** | RE: For EOP review: Drug Importation NPRM |
| **Date:** | Friday, November 1, 2019 11:26:06 AM |

We are aware of that requirement and will make sure that they are included in the review.

**From:** Fischbach, Aaron (OS/IOS) <Aaron.Fischbach@hhs.gov>
**Sent:** Friday, November 1, 2019 11:01 AM
**To:** Wise, Julie A. EOP/OMB (b)(6)
**Subject:** RE: For EOP review: Drug Importation NPRM

Sorry, one more thing… per the statute, the U.S. Trade Representative and U.S. Customs & Border Patrol need to review. Can you coordinate that, please?

**From:** Fischbach, Aaron (OS/IOS)
**Sent:** Friday, November 1, 2019 10:54 AM
**To:** Wise, Julie A. EOP/OMB (b)(6)
**Subject:** RE: For EOP review: Drug Importation NPRM

I've now been asked whether it could be paused/delayed so that it shows up Monday morning.

**From:** Wise, Julie A. EOP/OMB (b)(6)
**Sent:** Friday, November 1, 2019 10:16 AM
**To:** Fischbach, Aaron (OS/IOS) <Aaron.Fischbach@hhs.gov>
**Subject:** RE: For EOP review: Drug Importation NPRM

My understanding is that RegInfo updates every day (including weekends and holidays) at 6am. In that case, it should show up tomorrow morning as under review.

**From:** Fischbach, Aaron (OS/IOS) <Aaron.Fischbach@hhs.gov>
**Sent:** Friday, November 1, 2019 10:06 AM
**To:** Wise, Julie A. EOP/OMB (b)(6)
**Subject:** RE: For EOP review: Drug Importation NPRM

I can never remember with Friday uploads…will it show up tomorrow morning on Reginfo or not until Monday?

**From:** Wise, Julie A. EOP/OMB (b)(6)
**Sent:** Friday, November 1, 2019 9:44 AM
**To:** Fischbach, Aaron (OS/IOS) <Aaron.Fischbach@hhs.gov>
**Subject:** RE: For EOP review: Drug Importation NPRM

Got it – thanks. We plan to accept and circulate this afternoon.

**From:** Fischbach, Aaron (OS/IOS) <Aaron.Fischbach@hhs.gov>
**Sent:** Friday, November 1, 2019 9:42 AM
**To:** Wise, Julie A. EOP/OMB (b)(6)
**Subject:** RE: For EOP review: Drug Importation NPRM

It's in ROCIS.

| **RIN:** | 0910-AI45 (201910) | **Agency/Sub Agency:** | 0910 HHS/FDA | **Tracking #:** | |
|---|---|---|---|---|---|
| **Stage of Rulemaking Title:** | Proposed Rule Stage Importation of Prescription | **Submitted By:** | Calvin Dukes | **Submitted Date:** | 11/01/2019 |

Drugs

• EO Review Package was successfully submitted at 11/01/2019 09:30:39 AM.

Aaron Fischbach

HHS Exec Sec Senior Policy Coordinator

(202) 205-8644 Direct | (b)(6) | Cell

🖨 Please consider the environment before printing this e-mail.

---

**From:** Fischbach, Aaron (OS/IOS)
**Sent:** Thursday, October 31, 2019 4:13 PM
**To:** Wise, Julie A. EOP/OMB < (b)(6) >
**Subject:** RE: For EOP review: Drug Importation NPRM

Here's the updated NPRM, along with the RIA and the ROCIS table. Should I have it uploaded to ROCIS today or would you like to wait until tomorrow? Still pending the briefing paper.

---

**From:** Wise, Julie A. EOP/OMB < (b)(6) >
**Sent:** Thursday, October 31, 2019 3:20 PM
**To:** Fischbach, Aaron (OS/IOS) <Aaron.Fischbach@hhs.gov>
**Subject:** RE: For EOP review: Drug Importation NPRM

Aaron,

I checked with folks here and – assuming the rule is submitted tomorrow – we'll plan to accept and circulate tomorrow.

If things slow down on your end with the revised draft and it doesn't look like it will be submitted tomorrow, please let me know.

Thanks,

Julie

---

**From:** Fischbach, Aaron (OS/IOS) <Aaron.Fischbach@hhs.gov>
**Sent:** Thursday, October 31, 2019 2:38 PM
**To:** Wise, Julie A. EOP/OMB < (b)(6) >
**Subject:** RE: For EOP review: Drug Importation NPRM

I figured. Thanks for confirming. Not sure when the revised draft will come.

---

**From:** Wise, Julie A. EOP/OMB < (b)(6) >
**Sent:** Thursday, October 31, 2019 2:34 PM
**To:** Fischbach, Aaron (OS/IOS) <Aaron.Fischbach@hhs.gov>
**Subject:** RE: For EOP review: Drug Importation NPRM

I won't circulate until we have a formal version in ROCIS (we've been burned by early circulation before).

---

**From:** Fischbach, Aaron (OS/IOS) <Aaron.Fischbach@hhs.gov>
**Sent:** Thursday, October 31, 2019 2:28 PM
**To:** Wise, Julie A. EOP/OMB < (b)(6) >
**Subject:** RE: For EOP review: Drug Importation NPRM

If you haven't circulated yet, please don't. I'm being told this draft of the NPRM doesn't address all of the HHS comments we received during the first round of clearance here.

**From:** Fischbach, Aaron (OS/IOS)
**Sent:** Thursday, October 31, 2019 2:22 PM
**To:** 'Wise, Julie A. EOP/OMB' <​(b)(6)​>
**Subject:** RE: For EOP review: Drug Importation NPRM
Here's the RIA. Still pending the briefing paper.

**From:** Fischbach, Aaron (OS/IOS)
**Sent:** Thursday, October 31, 2019 1:56 PM
**To:** Wise, Julie A. EOP/OMB <​(b)(6)​>
**Subject:** RE: For EOP review: Drug Importation NPRM
Sorry, I forgot that FDA includes the RIA in a separate
document. I've requested that, as well.

**From:** Wise, Julie A. EOP/OMB <​(b)(6)​>
**Sent:** Thursday, October 31, 2019 1:31 PM
**To:** Fischbach, Aaron (OS/IOS) <Aaron.Fischbach@hhs.gov>
**Subject:** RE: For EOP review: Drug Importation NPRM
I am checking on ROCIS.
In the meantime, is the RIA in a separate attachment?

**From:** Fischbach, Aaron (OS/IOS)
<Aaron.Fischbach@hhs.gov>
**Sent:** Thursday, October 31, 2019 12:38 PM
**To:** Wise, Julie A. EOP/OMB <​(b)(6)​>
**Subject:** For EOP review: Drug Importation NPRM
Attached for EOP review is an NPRM on drug importation. I
have requested a briefing paper. Will you want to set up a
briefing for next week?
Please let me know when/whether we can submit to ROCIS.
Aaron Fischbach
HHS Exec Sec Senior Policy Coordinator
(202) 205-8644 Direct | ((b)(6)) Cell
🌱 Please consider the environment before printing this e-mail.



**THE SECRETARY OF HEALTH AND HUMAN SERVICES**

WASHINGTON, D.C. 20201

SEP 2 3 2020

The Honorable Charles Schumer
Minority Leader
United States Senate
Washington, DC 20510

Dear Senator Schumer:

I am writing to certify, under section 804(l) of the Federal Food, Drug, and Cosmetic Act (FD&C Act) (21 U.S.C. 384(l)), that I have determined that implementation of section 804(b)-(h) through the final rule Importation of Prescription Drugs, which I will sign immediately after this certification, poses no additional risk to the public's health and safety and will result in a significant reduction in the cost of covered products to the American consumer. The final rule (Regulation Identifier Number (RIN) 0910-AI45) includes conditions under which certain prescription drugs can be imported from Canada to the United States under section 804 of the FD&C Act. This certification is limited to implementation of section 804(b)-(h) through the final rule and does not authorize any other method of implementing section 804.

The final rule implementing section 804(b)-(h) of the FD&C Act includes requirements that provide control over and transparency into the supply chain. The final rule allows States, the District of Columbia, territories, and Indian Tribes, and in certain future circumstances pharmacists and wholesalers, to submit "Section 804 Importation Program" (SIP) proposals to the Food & Drug Administration (FDA) for review and authorization. An importation program could be co-sponsored by a pharmacist, a wholesaler, a State, the District of Columbia, a territory, or an Indian Tribe. These programs, authorized by FDA for renewable 2-year periods, will manage the importation of certain prescription drugs that are approved in Canada and, but for the products' labeling when marketed in Canada, meet the conditions in an FDA-approved new drug application or abbreviated new drug application. Under these importation programs, a "foreign seller" that is licensed to wholesale drugs in Canada and registered with FDA will purchase eligible prescription drugs directly from the manufacturer. An importer that is a wholesale distributor or pharmacist licensed in the United States will buy the drugs directly from the foreign seller. Both the foreign seller and the importer are subject to certain requirements under the rule, including serialization and recordkeeping requirements. In addition, eligible prescription drugs must undergo statutorily prescribed testing to ensure that the drugs are authentic, are not degraded, and meet established specifications and standards. If FDA accepts the testing results, then the drugs must be re-labeled with the FDA-approved labeling. Biological products, controlled substances, and certain other categories of drug products, such as drugs subject to Risk Evaluation and Mitigation Strategies (REMS), will not be eligible for importation under the final rule. The final rule also includes post-importation requirements, including safety reporting and recall requirements. Importation programs must also demonstrate a significant cost reduction to the American consumer. An importation program may be terminated by FDA at any time for the reasons outlined in this final rule.

Case 1:20-cv-03402-TJK   Document 42-2   Filed 06/10/22   Page 16 of 36

The personal importation provisions of section 804(j) of the FD&C Act are not being implemented through this rulemaking, and thus section 804(j) is not currently in effect. Any implementation of section 804(j) and any other implementation of section 804 outside the scope of the Importation of Prescription Drugs rulemaking would occur through a separate certification.

I look forward to continuing our work together to help American patients access safe, effective, and high-quality prescription drugs. A copy of this letter is also being sent to President of the Senate Pence, Speaker Pelosi, Majority Leader McConnell, Minority Leader McCarthy, Chairmen Alexander and Pallone, Senator Murray, and Representative Walden.

Sincerely,

Alex M. Azar II



**THE SECRETARY OF HEALTH AND HUMAN SERVICES**

WASHINGTON, D.C. 20201

ᴐᴇᴘ 2 3 2020

The Honorable Frank Pallone
Chairman
Committee on Energy and Commerce
U.S. House of Representatives
Washington, DC 20515

Dear Chairman Pallone:

I am writing to certify, under section 804(l) of the Federal Food, Drug, and Cosmetic Act
(FD&C Act) (21 U.S.C. 384(l)), that I have determined that implementation of section 804(b)-(h)
through the final rule Importation of Prescription Drugs, which I will sign immediately after this
certification, poses no additional risk to the public's health and safety and will result in a
significant reduction in the cost of covered products to the American consumer. The final rule
(Regulation Identifier Number (RIN) 0910-AI45) includes conditions under which certain
prescription drugs can be imported from Canada to the United States under section 804 of the
FD&C Act. This certification is limited to implementation of section 804(b)-(h) through the
final rule and does not authorize any other method of implementing section 804.

The final rule implementing section 804(b)-(h) of the FD&C Act includes requirements that
provide control over and transparency into the supply chain. The final rule allows States, the
District of Columbia, territories, and Indian Tribes, and in certain future circumstances
pharmacists and wholesalers, to submit "Section 804 Importation Program" (SIP) proposals to
the Food & Drug Administration (FDA) for review and authorization. An importation program
could be co-sponsored by a pharmacist, a wholesaler, a State, the District of Columbia, a
territory, or an Indian Tribe. These programs, authorized by FDA for renewable 2-year periods,
will manage the importation of certain prescription drugs that are approved in Canada and, but
for the products' labeling when marketed in Canada, meet the conditions in an FDA-approved
new drug application or abbreviated new drug application. Under these importation programs, a
"foreign seller" that is licensed to wholesale drugs in Canada and registered with FDA will
purchase eligible prescription drugs directly from the manufacturer. An importer that is a
wholesale distributor or pharmacist licensed in the United States will buy the drugs directly from
the foreign seller. Both the foreign seller and the importer are subject to certain requirements
under the rule, including serialization and recordkeeping requirements. In addition, eligible
prescription drugs must undergo statutorily prescribed testing to ensure that the drugs are
authentic, are not degraded, and meet established specifications and standards. If FDA accepts
the testing results, then the drugs must be re-labeled with the FDA-approved labeling. Biological
products, controlled substances, and certain other categories of drug products, such as drugs
subject to Risk Evaluation and Mitigation Strategies (REMS), will not be eligible for importation
under the final rule. The final rule also includes post-importation requirements, including safety
reporting and recall requirements. Importation programs must also demonstrate a significant
cost reduction to the American consumer. An importation program may be terminated by FDA
at any time for the reasons outlined in this final rule.

Case 1:20-cv-03402-TJK   Document 42-2   Filed 06/10/22   Page 18 of 36

The Honorable Frank Pallone
Page 2

The personal importation provisions of section 804(j) of the FD&C Act are not being implemented through this rulemaking, and thus section 804(j) is not currently in effect. Any implementation of section 804(j) and any other implementation of section 804 outside the scope of the Importation of Prescription Drugs rulemaking would occur through a separate certification.

I look forward to continuing our work together to help American patients access safe, effective, and high-quality prescription drugs. A copy of this letter is also being sent to President of the Senate Pence, Speaker Pelosi, Majority Leader McConnell, Minority Leaders Schumer and McCarthy, Chairman Alexander, Senator Murray, and Representative Walden.

Sincerely,

Alex M. Azar II



**THE SECRETARY OF HEALTH AND HUMAN SERVICES**

WASHINGTON, D.C. 20201

SEP 2 3 2020

The Honorable Gregory Walden
Ranking Member
Committee on Energy and Commerce
U.S. House of Representatives
Washington, DC 20515

Dear Represenative Walden:

I am writing to certify, under section 804(l) of the Federal Food, Drug, and Cosmetic Act
(FD&C Act) (21 U.S.C. 384(l)), that I have determined that implementation of section 804(b)-(h)
through the final rule Importation of Prescription Drugs, which I will sign immediately after this
certification, poses no additional risk to the public's health and safety and will result in a
significant reduction in the cost of covered products to the American consumer. The final rule
(Regulation Identifier Number (RIN) 0910-AI45) includes conditions under which certain
prescription drugs can be imported from Canada to the United States under section 804 of the
FD&C Act. This certification is limited to implementation of section 804(b)-(h) through the
final rule and does not authorize any other method of implementing section 804.

The final rule implementing section 804(b)-(h) of the FD&C Act includes requirements that
provide control over and transparency into the supply chain. The final rule allows States, the
District of Columbia, territories, and Indian Tribes, and in certain future circumstances
pharmacists and wholesalers, to submit "Section 804 Importation Program" (SIP) proposals to
the Food & Drug Administration (FDA) for review and authorization. An importation program
could be co-sponsored by a pharmacist, a wholesaler, a State, the District of Columbia, a
territory, or an Indian Tribe. These programs, authorized by FDA for renewable 2-year periods,
will manage the importation of certain prescription drugs that are approved in Canada and, but
for the products' labeling when marketed in Canada, meet the conditions in an FDA-approved
new drug application or abbreviated new drug application. Under these importation programs, a
"foreign seller" that is licensed to wholesale drugs in Canada and registered with FDA will
purchase eligible prescription drugs directly from the manufacturer. An importer that is a
wholesale distributor or pharmacist licensed in the United States will buy the drugs directly from
the foreign seller. Both the foreign seller and the importer are subject to certain requirements
under the rule, including serialization and recordkeeping requirements. In addition, eligible
prescription drugs must undergo statutorily prescribed testing to ensure that the drugs are
authentic, are not degraded, and meet established specifications and standards. If FDA accepts
the testing results, then the drugs must be re-labeled with the FDA-approved labeling. Biological
products, controlled substances, and certain other categories of drug products, such as drugs
subject to Risk Evaluation and Mitigation Strategies (REMS), will not be eligible for importation
under the final rule. The final rule also includes post-importation requirements, including safety
reporting and recall requirements. Importation programs must also demonstrate a significant
cost reduction to the American consumer. An importation program may be terminated by FDA
at any time for the reasons outlined in this final rule.

The Honorable Gregory Walden
Page 2

The personal importation provisions of section 804(j) of the FD&C Act are not being implemented through this rulemaking, and thus section 804(j) is not currently in effect.  Any implementation of section 804(j) and any other implementation of section 804 outside the scope of the Importation of Prescription Drugs rulemaking would occur through a separate certification.

I look forward to continuing our work together to help American patients access safe, effective, and high-quality prescription drugs.  A copy of this letter is also being sent to President of the Senate Pence, Speaker Pelosi, Majority Leader McConnell, Minority Leaders Schumer and McCarthy, Chairmen Alexander and Pallone, and Senator Murray.

Sincerely,

Alex M. Azar II



**THE SECRETARY OF HEALTH AND HUMAN SERVICES**

WASHINGTON, D.C. 20201

SEP 2 3 2020

The Honorable Kevin McCarthy
Minority Leader
U.S. House of Representatives
Washington, DC 20515

Dear Representative McCarthy:

I am writing to certify, under section 804(l) of the Federal Food, Drug, and Cosmetic Act (FD&C Act) (21 U.S.C. 384(l)), that I have determined that implementation of section 804(b)-(h) through the final rule Importation of Prescription Drugs, which I will sign immediately after this certification, poses no additional risk to the public's health and safety and will result in a significant reduction in the cost of covered products to the American consumer. The final rule (Regulation Identifier Number (RIN) 0910-AI45) includes conditions under which certain prescription drugs can be imported from Canada to the United States under section 804 of the FD&C Act. This certification is limited to implementation of section 804(b)-(h) through the final rule and does not authorize any other method of implementing section 804.

The final rule implementing section 804(b)-(h) of the FD&C Act includes requirements that provide control over and transparency into the supply chain. The final rule allows States, the District of Columbia, territories, and Indian Tribes, and in certain future circumstances pharmacists and wholesalers, to submit "Section 804 Importation Program" (SIP) proposals to the Food & Drug Administration (FDA) for review and authorization. An importation program could be co-sponsored by a pharmacist, a wholesaler, a State, the District of Columbia, a territory, or an Indian Tribe. These programs, authorized by FDA for renewable 2-year periods, will manage the importation of certain prescription drugs that are approved in Canada and, but for the products' labeling when marketed in Canada, meet the conditions in an FDA-approved new drug application or abbreviated new drug application. Under these importation programs, a "foreign seller" that is licensed to wholesale drugs in Canada and registered with FDA will purchase eligible prescription drugs directly from the manufacturer. An importer that is a wholesale distributor or pharmacist licensed in the United States will buy the drugs directly from the foreign seller. Both the foreign seller and the importer are subject to certain requirements under the rule, including serialization and recordkeeping requirements. In addition, eligible prescription drugs must undergo statutorily prescribed testing to ensure that the drugs are authentic, are not degraded, and meet established specifications and standards. If FDA accepts the testing results, then the drugs must be re-labeled with the FDA-approved labeling. Biological products, controlled substances, and certain other categories of drug products, such as drugs subject to Risk Evaluation and Mitigation Strategies (REMS), will not be eligible for importation under the final rule. The final rule also includes post-importation requirements, including safety reporting and recall requirements. Importation programs must also demonstrate a significant cost reduction to the American consumer. An importation program may be terminated by FDA at any time for the reasons outlined in this final rule.

Case 1:20-cv-03402-TJK   Document 42-2   Filed 06/10/22   Page 22 of 36

The Honorable Kevin McCarthy
Page 2

The personal importation provisions of section 804(j) of the FD&C Act are not being implemented through this rulemaking, and thus section 804(j) is not currently in effect. Any implementation of section 804(j) and any other implementation of section 804 outside the scope of the Importation of Prescription Drugs rulemaking would occur through a separate certification.

I look forward to continuing our work together to help American patients access safe, effective, and high-quality prescription drugs. A copy of this letter is also being sent to President of the Senate Pence, Speaker Pelosi, Majority Leader McConnell, Minority Leader Schumer, Chairmen Alexander and Pallone, Senator Murray, and Representative Walden.

Sincerely,

Alex M. Azar II



**THE SECRETARY OF HEALTH AND HUMAN SERVICES**

WASHINGTON, D.C. 20201

SEP 2 3 2020

The Honorable Lamar Alexander
Chairman
Committee on Health, Education,
  Labor, and Pensions
United States Senate
Washington, DC 20510

Dear Chairman Alexander:

I am writing to certify, under section 804(l) of the Federal Food, Drug, and Cosmetic Act
(FD&C Act) (21 U.S.C. 384(l)), that I have determined that implementation of section 804(b)-(h)
through the final rule Importation of Prescription Drugs, which I will sign immediately after this
certification, poses no additional risk to the public's health and safety and will result in a
significant reduction in the cost of covered products to the American consumer. The final rule
(Regulation Identifier Number (RIN) 0910-AI45) includes conditions under which certain
prescription drugs can be imported from Canada to the United States under section 804 of the
FD&C Act. This certification is limited to implementation of section 804(b)-(h) through the
final rule and does not authorize any other method of implementing section 804.

The final rule implementing section 804(b)-(h) of the FD&C Act includes requirements that
provide control over and transparency into the supply chain. The final rule allows States, the
District of Columbia, territories, and Indian Tribes, and in certain future circumstances
pharmacists and wholesalers, to submit "Section 804 Importation Program" (SIP) proposals to
the Food & Drug Administration (FDA) for review and authorization. An importation program
could be co-sponsored by a pharmacist, a wholesaler, a State, the District of Columbia, a
territory, or an Indian Tribe. These programs, authorized by FDA for renewable 2-year periods,
will manage the importation of certain prescription drugs that are approved in Canada and, but
for the products' labeling when marketed in Canada, meet the conditions in an FDA-approved
new drug application or abbreviated new drug application. Under these importation programs, a
"foreign seller" that is licensed to wholesale drugs in Canada and registered with FDA will
purchase eligible prescription drugs directly from the manufacturer. An importer that is a
wholesale distributor or pharmacist licensed in the United States will buy the drugs directly from
the foreign seller. Both the foreign seller and the importer are subject to certain requirements
under the rule, including serialization and recordkeeping requirements. In addition, eligible
prescription drugs must undergo statutorily prescribed testing to ensure that the drugs are
authentic, are not degraded, and meet established specifications and standards. If FDA accepts
the testing results, then the drugs must be re-labeled with the FDA-approved labeling. Biological
products, controlled substances, and certain other categories of drug products, such as drugs
subject to Risk Evaluation and Mitigation Strategies (REMS), will not be eligible for importation
under the final rule. The final rule also includes post-importation requirements, including safety
reporting and recall requirements. Importation programs must also demonstrate a significant
cost reduction to the American consumer. An importation program may be terminated by FDA
at any time for the reasons outlined in this final rule.

The Honorable Lamar Alexander
Page 2

The personal importation provisions of section 804(j) of the FD&C Act are not being implemented through this rulemaking, and thus section 804(j) is not currently in effect. Any implementation of section 804(j) and any other implementation of section 804 outside the scope of the Importation of Prescription Drugs rulemaking would occur through a separate certification.

I look forward to continuing our work together to help American patients access safe, effective, and high-quality prescription drugs. A copy of this letter is also being sent to President of the Senate Pence, Speaker Pelosi, Majority Leader McConnell, Minority Leaders Schumer and McCarthy, Chairman Pallone, Senator Murray, and Representative Walden.

Sincerely,

Alex M. Azar II



**THE SECRETARY OF HEALTH AND HUMAN SERVICES**

WASHINGTON, D.C. 20201

SEP 2 3 2020

The Honorable Michael R. Pence
President
United States Senate
Washington, DC 20510

Dear Mr. President:

I am writing to certify, under section 804(l) of the Federal Food, Drug, and Cosmetic Act
(FD&C Act) (21 U.S.C. 384(l)), that I have determined that implementation of section 804(b)-(h)
through the final rule Importation of Prescription Drugs, which I will sign immediately after this
certification, poses no additional risk to the public's health and safety and will result in a
significant reduction in the cost of covered products to the American consumer. The final rule
(Regulation Identifier Number (RIN) 0910-AI45) includes conditions under which certain
prescription drugs can be imported from Canada to the United States under section 804 of the
FD&C Act. This certification is limited to implementation of section 804(b)-(h) through the
final rule and does not authorize any other method of implementing section 804.

The final rule implementing section 804(b)-(h) of the FD&C Act includes requirements that
provide control over and transparency into the supply chain. The final rule allows States, the
District of Columbia, territories, and Indian Tribes, and in certain future circumstances
pharmacists and wholesalers, to submit "Section 804 Importation Program" (SIP) proposals to
the Food & Drug Administration (FDA) for review and authorization. An importation program
could be co-sponsored by a pharmacist, a wholesaler, a State, the District of Columbia, a
territory, or an Indian Tribe. These programs, authorized by FDA for renewable 2-year periods,
will manage the importation of certain prescription drugs that are approved in Canada and, but
for the products' labeling when marketed in Canada, meet the conditions in an FDA-approved
new drug application or abbreviated new drug application. Under these importation programs, a
"foreign seller" that is licensed to wholesale drugs in Canada and registered with FDA will
purchase eligible prescription drugs directly from the manufacturer. An importer that is a
wholesale distributor or pharmacist licensed in the United States will buy the drugs directly from
the foreign seller. Both the foreign seller and the importer are subject to certain requirements
under the rule, including serialization and recordkeeping requirements. In addition, eligible
prescription drugs must undergo statutorily prescribed testing to ensure that the drugs are
authentic, are not degraded, and meet established specifications and standards. If FDA accepts
the testing results, then the drugs must be re-labeled with the FDA-approved labeling. Biological
products, controlled substances, and certain other categories of drug products, such as drugs
subject to Risk Evaluation and Mitigation Strategies (REMS), will not be eligible for importation
under the final rule. The final rule also includes post-importation requirements, including safety
reporting and recall requirements. Importation programs must also demonstrate a significant
cost reduction to the American consumer. An importation program may be terminated by FDA
at any time for the reasons outlined in this final rule.

The Honorable Michael R. Pence<br>Page 2

The personal importation provisions of section 804(j) of the FD&C Act are not being implemented through this rulemaking, and thus section 804(j) is not currently in effect. Any implementation of section 804(j) and any other implementation of section 804 outside the scope of the Importation of Prescription Drugs rulemaking would occur through a separate certification.

I look forward to continuing our work together to help American patients access safe, effective, and high-quality prescription drugs. A copy of this letter is also being sent to Speaker Pelosi, Majority Leader McConnell, Minority Leaders Schumer and McCarthy, Chairmen Alexander and Pallone, Senator Murray, and Representative Walden.

Sincerely,

Alex M. Azar II



**THE SECRETARY OF HEALTH AND HUMAN SERVICES**

WASHINGTON, D.C. 20201

SEP 2 3 2020

The Honorable Mitch McConnell
Majority Leader
United States Senate
Washington, DC 20510

Dear Majority Leader McConnell:

I am writing to certify, under section 804(l) of the Federal Food, Drug, and Cosmetic Act (FD&C Act) (21 U.S.C. 384(l)), that I have determined that implementation of section 804(b)-(h) through the final rule Importation of Prescription Drugs, which I will sign immediately after this certification, poses no additional risk to the public's health and safety and will result in a significant reduction in the cost of covered products to the American consumer. The final rule (Regulation Identifier Number (RIN) 0910-AI45) includes conditions under which certain prescription drugs can be imported from Canada to the United States under section 804 of the FD&C Act. This certification is limited to implementation of section 804(b)-(h) through the final rule and does not authorize any other method of implementing section 804.

The final rule implementing section 804(b)-(h) of the FD&C Act includes requirements that provide control over and transparency into the supply chain. The final rule allows States, the District of Columbia, territories, and Indian Tribes, and in certain future circumstances pharmacists and wholesalers, to submit "Section 804 Importation Program" (SIP) proposals to the Food & Drug Administration (FDA) for review and authorization. An importation program could be co-sponsored by a pharmacist, a wholesaler, a State, the District of Columbia, a territory, or an Indian Tribe. These programs, authorized by FDA for renewable 2-year periods, will manage the importation of certain prescription drugs that are approved in Canada and, but for the products' labeling when marketed in Canada, meet the conditions in an FDA-approved new drug application or abbreviated new drug application. Under these importation programs, a "foreign seller" that is licensed to wholesale drugs in Canada and registered with FDA will purchase eligible prescription drugs directly from the manufacturer. An importer that is a wholesale distributor or pharmacist licensed in the United States will buy the drugs directly from the foreign seller. Both the foreign seller and the importer are subject to certain requirements under the rule, including serialization and recordkeeping requirements. In addition, eligible prescription drugs must undergo statutorily prescribed testing to ensure that the drugs are authentic, are not degraded, and meet established specifications and standards. If FDA accepts the testing results, then the drugs must be re-labeled with the FDA-approved labeling. Biological products, controlled substances, and certain other categories of drug products, such as drugs subject to Risk Evaluation and Mitigation Strategies (REMS), will not be eligible for importation under the final rule. The final rule also includes post-importation requirements, including safety reporting and recall requirements. Importation programs must also demonstrate a significant cost reduction to the American consumer. An importation program may be terminated by FDA at any time for the reasons outlined in this final rule.

The Honorable Mitch McConnell
Page 2

The personal importation provisions of section 804(j) of the FD&C Act are not being implemented through this rulemaking, and thus section 804(j) is not currently in effect. Any implementation of section 804(j) and any other implementation of section 804 outside the scope of the Importation of Prescription Drugs rulemaking would occur through a separate certification.

I look forward to continuing our work together to help American patients access safe, effective, and high-quality prescription drugs. A copy of this letter is also being sent to President of the Senate Pence, Speaker Pelosi, Minority Leaders Schumer and McCarthy, Chairmen Alexander and Pallone, Senator Murray, and Representative Walden.

Sincerely,

Alex M. Azar II



**THE SECRETARY OF HEALTH AND HUMAN SERVICES**

WASHINGTON, D.C. 20201

SEP 2 3 2020

The Honorable Nancy Pelosi
Speaker of the House
U.S. House of Representatives
Washington, DC 20515

Dear Madam Speaker:

I am writing to certify, under section 804(l) of the Federal Food, Drug, and Cosmetic Act (FD&C Act) (21 U.S.C. 384(l)), that I have determined that implementation of section 804(b)-(h) through the final rule Importation of Prescription Drugs, which I will sign immediately after this certification, poses no additional risk to the public's health and safety and will result in a significant reduction in the cost of covered products to the American consumer. The final rule (Regulation Identifier Number (RIN) 0910-AI45) includes conditions under which certain prescription drugs can be imported from Canada to the United States under section 804 of the FD&C Act. This certification is limited to implementation of section 804(b)-(h) through the final rule and does not authorize any other method of implementing section 804.

The final rule implementing section 804(b)-(h) of the FD&C Act includes requirements that provide control over and transparency into the supply chain. The final rule allows States, the District of Columbia, territories, and Indian Tribes, and in certain future circumstances pharmacists and wholesalers, to submit "Section 804 Importation Program" (SIP) proposals to the Food & Drug Administration (FDA) for review and authorization. An importation program could be co-sponsored by a pharmacist, a wholesaler, a State, the District of Columbia, a territory, or an Indian Tribe. These programs, authorized by FDA for renewable 2-year periods, will manage the importation of certain prescription drugs that are approved in Canada and, but for the products' labeling when marketed in Canada, meet the conditions in an FDA-approved new drug application or abbreviated new drug application. Under these importation programs, a "foreign seller" that is licensed to wholesale drugs in Canada and registered with FDA will purchase eligible prescription drugs directly from the manufacturer. An importer that is a wholesale distributor or pharmacist licensed in the United States will buy the drugs directly from the foreign seller. Both the foreign seller and the importer are subject to certain requirements under the rule, including serialization and recordkeeping requirements. In addition, eligible prescription drugs must undergo statutorily prescribed testing to ensure that the drugs are authentic, are not degraded, and meet established specifications and standards. If FDA accepts the testing results, then the drugs must be re-labeled with the FDA-approved labeling. Biological products, controlled substances, and certain other categories of drug products, such as drugs subject to Risk Evaluation and Mitigation Strategies (REMS), will not be eligible for importation under the final rule. The final rule also includes post-importation requirements, including safety reporting and recall requirements. Importation programs must also demonstrate a significant cost reduction to the American consumer. An importation program may be terminated by FDA at any time for the reasons outlined in this final rule.

The Honorable Nancy Pelosi
Page 2

The personal importation provisions of section 804(j) of the FD&C Act are not being implemented through this rulemaking, and thus section 804(j) is not currently in effect. Any implementation of section 804(j) and any other implementation of section 804 outside the scope of the Importation of Prescription Drugs rulemaking would occur through a separate certification.

I look forward to continuing our work together to help American patients access safe, effective, and high-quality prescription drugs. A copy of this letter is also being sent to President of the Senate Pence, Majority Leader McConnell, Minority Leaders Schumer and McCarthy, Chairmen Alexander and Pallone, Senator Murray, and Representative Walden.

Sincerely,

Alex M. Azar II



**THE SECRETARY OF HEALTH AND HUMAN SERVICES**

WASHINGTON, D.C. 20201

SEP 2 3 2020

The Honorable Patty Murray
Ranking Member
Committee on Health, Education,
  Labor, and Pensions
United States Senate
Washington, DC 20510

Dear Senator Murray:

I am writing to certify, under section 804(l) of the Federal Food, Drug, and Cosmetic Act
(FD&C Act) (21 U.S.C. 384(l)), that I have determined that implementation of section 804(b)-(h)
through the final rule Importation of Prescription Drugs, which I will sign immediately after this
certification, poses no additional risk to the public's health and safety and will result in a
significant reduction in the cost of covered products to the American consumer. The final rule
(Regulation Identifier Number (RIN) 0910-AI45) includes conditions under which certain
prescription drugs can be imported from Canada to the United States under section 804 of the
FD&C Act. This certification is limited to implementation of section 804(b)-(h) through the
final rule and does not authorize any other method of implementing section 804.

The final rule implementing section 804(b)-(h) of the FD&C Act includes requirements that
provide control over and transparency into the supply chain. The final rule allows States, the
District of Columbia, territories, and Indian Tribes, and in certain future circumstances
pharmacists and wholesalers, to submit "Section 804 Importation Program" (SIP) proposals to
the Food & Drug Administration (FDA) for review and authorization. An importation program
could be co-sponsored by a pharmacist, a wholesaler, a State, the District of Columbia, a
territory, or an Indian Tribe. These programs, authorized by FDA for renewable 2-year periods,
will manage the importation of certain prescription drugs that are approved in Canada and, but
for the products' labeling when marketed in Canada, meet the conditions in an FDA-approved
new drug application or abbreviated new drug application. Under these importation programs, a
"foreign seller" that is licensed to wholesale drugs in Canada and registered with FDA will
purchase eligible prescription drugs directly from the manufacturer. An importer that is a
wholesale distributor or pharmacist licensed in the United States will buy the drugs directly from
the foreign seller. Both the foreign seller and the importer are subject to certain requirements
under the rule, including serialization and recordkeeping requirements. In addition, eligible
prescription drugs must undergo statutorily prescribed testing to ensure that the drugs are
authentic, are not degraded, and meet established specifications and standards. If FDA accepts
the testing results, then the drugs must be re-labeled with the FDA-approved labeling. Biological
products, controlled substances, and certain other categories of drug products, such as drugs
subject to Risk Evaluation and Mitigation Strategies (REMS), will not be eligible for importation
under the final rule. The final rule also includes post-importation requirements, including safety
reporting and recall requirements. Importation programs must also demonstrate a significant
cost reduction to the American consumer. An importation program may be terminated by FDA
at any time for the reasons outlined in this final rule.

The Honorable Patty Murray
Page 2

The personal importation provisions of section 804(j) of the FD&C Act are not being implemented through this rulemaking, and thus section 804(j) is not currently in effect. Any implementation of section 804(j) and any other implementation of section 804 outside the scope of the Importation of Prescription Drugs rulemaking would occur through a separate certification.

I look forward to continuing our work together to help American patients access safe, effective, and high-quality prescription drugs. A copy of this letter is also being sent to President of the Senate Pence, Speaker Pelosi, Majority Leader McConnell, Minority Leaders Schumer and McCarthy, Chairmen Alexander and Pallone, and Representative Walden.

Sincerely,

Alex M. Azar II

| | |
|---|---|
| **From:** | Wise, Julie A. EOP/OMB |
| **To:** | Fischbach, Aaron (OS/IOS) |
| **Subject:** | RE: FDA Drug Importation NPRM - EOP and Interagency comments |
| **Attachments:** | Revised DHS Comments for OMB.DOCX |

Aaron,

At the moment, it doesn't look like any of those times work for key folks on this end but I'm going to see if there is any flexibility in schedules.

In the meantime, attached are comments from (b)(5) on the NPRM.

Thanks,

Julie

> **From:** Fischbach, Aaron (OS/IOS) <Aaron.Fischbach@hhs.gov>
> **Sent:** Tuesday, November 19, 2019 11:47 AM
> **To:** Wise, Julie A. EOP/OMB < (b)(6) >
> **Subject:** RE: FDA Drug Importation NPRM - EOP and Interagency comments
>
> FDA finally got back to me about scheduling a call. Do any of these times work for the EOP?
> Thu: 2:30-3:00; 4:30-5:00
> Fri: 3:00-4:00

> **From:** Wise, Julie A. EOP/OMB < (b)(6) >
> **Sent:** Friday, November 15, 2019 11:00 AM
> **To:** Fischbach, Aaron (OS/IOS) <Aaron.Fischbach@hhs.gov>
> **Subject:** FDA Drug Importation NPRM - EOP and Interagency comments
>
> Aaron,
>
> Please find EOP and Interagency (b)(5) comments on **FDA's Drug Importation NPRM** and RIA attached. (b)(5) has requested additional time and I expect to see their comments early/mid-week next week.
>
> EOP (including some policy officials) would like to have a call with FDA to talk through some high-level questions in the passback (see first comment in the NPRM attachment). Looking at calendars, key folks are available:
> Mon (11/18): 4:30-5:30
> Tue (11/19): 2-3pm
> Wed (11/20): 10-11am; 3-4pm
> Thanks,
>
> **Julie A. Wise**
> Office of Information and Regulatory Affairs
> Phone: (b)(6)
> Email (b)(6)

Withheld pursuant to exemption

(b)(5)

of the Freedom of Information Act

| | |
|---|---|
| **From:** | Wise, Julie A. EOP/OMB |
| **To:** | Fischbach, Aaron (OS/IOS) |
| **Subject:** | RE: For EOP review: FDA Importation final rule and guidance |
| **Attachments:** | Comments_FDA Drug Importation Final Rule.docx |
| | Comments_2020-199-FDA Drug Importation Final Rule RIA.docx |
| | Comments_FDA Drug Importation Final Guidance.docx |

Aaron,

Comments [                    (b)(5)                    ] on the **FDA Drug Importation documents** are attached. Given the interest in expedited timing, when you have a sense of next steps please let me know when we are likely to see revisions/responses from FDA.

Thanks,

Julie

> **From:** Fischbach, Aaron (OS/IOS) <Aaron.Fischbach@hhs.gov>
>
> **Sent:** Thursday, September 10, 2020 12:38 PM
>
> **To:** Wise, Julie A. EOP/OMB [    (b)(6)    ]
>
> **Subject:** For EOP review: FDA Importation final rule and guidance
>
> Attached for review is the package that includes the rule and the guidance. I will also get these uploaded to ROCIS.
>
> Please let me know when you expect to pass back.
>
> Aaron Fischbach
>
> HHS Exec Sec Senior Policy Coordinator
>
> (202) 205-8644 Direct | [  (b)(6)  ] Cell
>
> Please consider the environment before printing this e-mail.

Withheld pursuant to exemption

(b)(5)

of the Freedom of Information Act